A04A0210. IN THE INTEREST OF J. S. H. et al., children.
(598 SE2d 545)

ADAMS, Judge.

The mother of J. S. H. and J. D. H. and the father of J. D. H. appeal the termination of their parental rights. They contend that the state failed to present sufficient evidence to support the trial court's decision. For the reasons that follow, we affirm.

"On appeal, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated." (Footnote omitted.) *In the Interest of T. B.*, 249 Ga. App. 283, 286 (1) (548 SE2d 45) (2001).

Viewed in that light, the record shows that J. S. H. was born on August 8, 1996, and resided in Glynn County. Seven months later, the Georgia Department of Human Resources, acting through the Glynn County Department of Family and Children Services (the "Department"), obtained custody based on allegations of physical abuse and

neglect. The child was placed in foster care and lived there for 19 months before returning to the mother's custody.

In August 2001, the child appeared with his mother at his aunt's home with bruises on his face. The aunt contacted the police, and the Department was notified. The mother stated that she had clapped the child's face between her hands because he would not do his homework and because he had made a profane remark to her. She admitted putting makeup on the child to try to conceal the bruising. The mother was arrested and charged with cruelty to children.

The Department allowed the child to remain in his aunt's custody, but after continuous conflict between the aunt and the mother, the agency took custody and filed a deprivation petition. Following an adjudicatory hearing, the court found the child deprived and awarded temporary legal custody to the Department. The mother did not appeal the order. The biological father could not be found, and he later surrendered his parental rights and is not a party to this appeal. The child was placed in the foster home where he had lived as a baby, and the Department established a plan for reunification with the mother.

The reunification plan required the mother to learn and practice smart disciplining skills; learn and practice responsible parenting; maintain a meaningful parental relationship with the child; and cooperate in good faith with the Department. The plan required the mother to take several specific steps: she was required to participate in counseling therapy or anger management beginning October 12, 2001; to attend parenting skills training classes; and to attend supervised visits with the child at least twice a week, or at least once a week when the child was in foster care. She was required to keep all her appointments for the parenting sessions, to complete the training by December 18, 2001, and to receive a certificate of satisfactory completion. She was required to cooperate with the Department, child support enforcement, and other agencies in determining her obligations. The case plan was made a part of a court dispositional order. The goals of the mother's multiple case plans were consistent for about one year.

Sometime prior to September 2002, the mother moved back to Georgia from North Carolina and gave birth to J. D. H. Because of the history of abuse and neglect and the mother's lack of progress with her reunification plan, the Department took custody of that child immediately and filed a deprivation petition. Following an adjudicatory hearing, the court entered an order finding J. D. H. deprived and awarding temporary legal custody to the Department. That order was not appealed.

The mother of both children and the father of J. D. H. then consented to a nonreunification case plan in October 2002. The two children were placed with their aunt and uncle, but that placement

lasted less than one month because the mother disrupted the aunt and uncle by telephoning at times such as 2:00 and 4:00 a.m., whereupon the children were returned to foster care.

In January 2003, the Department advised the court that the parents had moved to Florida. On March 3, the Department petitioned for termination of parental rights. The father was given notice that he was required to legitimate J. D. H. On April 24, the juvenile court conducted an evidentiary hearing on the petition. The parents did not appear at the hearing when the case was called at 10:35 a.m. Their attorney advised that they were expected to arrive at 11:30 a.m. and sought a continuance. The court denied the continuance but noted that the parents would be heard if they appeared that day. The Department presented the testimony of two social service case managers; then the court recessed from 11:20 a.m. until 3:30 p.m. that day. The parents were not present at 3:30 p.m., and their attorney explained that although they had arrived, they decided to leave because they needed to return their car to Florida and the mother needed to be at work. The hearing proceeded without them.

On May 8, 2003, the court entered an order terminating the appellants' parental rights to J. S. H. and J. D. H. The parents appeal on the sole ground that the evidence was insufficient to support the court's findings.

Before terminating a parent's rights, a juvenile court must employ a two-step test:

> First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.

(Footnote omitted.) *In the Interest of T. B.*, 249 Ga. App. at 285-286 (1).

With regard to the father of J. D. H., the trial court properly terminated his rights to the child for failure to take the required steps to legitimate the child following proper notice. See OCGA § 15-11-96 (i). See, e.g., *In the Interest of S. L. H.*, 247 Ga. App. 594, 595 (544 SE2d 518) (2001).

With regard to both parents, the trial court found that the children were deprived at the time they first came into the Department's custody, and the appellants never appealed those determinations. "Therefore, [the parents are] bound by this finding of deprivation and the first factor is satisfied." (Citations and punctuation omitted.) *In the Interest of M. E. C.*, 228 Ga. App. 9, 10 (1) (a) (491 SE2d 107) (1997).

In determining whether lack of proper parental care or control caused the deprivation, among other things, the court must consider past or present, egregious, physically abusive conduct and evidence of mental or emotional neglect of the child or of another child by the same parent. OCGA § 15-11-94 (b) (4) (B) (iv), (v). In this case there was ample egregious and neglectful conduct by the mother toward both children and by the father toward J. D. H. and his other children.

With regard to the father of the baby, the evidence shows that he has not legitimated the child, he has not supported the child, he has not visited the child more than once, he has a criminal history of performing sodomy on another of his own infant children, and his parental rights to two of his other children have been terminated.

With regard to the mother, the evidence shows that she had struck the older child causing bruises to both sides of his face. In addition, the mother had visited the older child only twice in the 18 months preceding the hearing, and she had visited the younger child only once since she was born. She has shown almost no interest in the children including failing to appear at the termination hearing. She has virtually no relationship with either child and has taken pitifully few steps to try to maintain one.

The mother also failed without justifiable cause for a period of one year or more prior to the petition for termination to develop and maintain a parental bond and to comply with the court ordered reunification plan. See OCGA § 15-11-94 (b) (4) (C) (i), (iii). The mother has shown continued neglect of the children. She has moved frequently, maintained irregular employment and has not even kept in good contact with the Department. The evidence supports the conclusion that the mother has virtually abandoned the children. As already noted, she rarely visited the children. There is no evidence that she sent letters, cards or gifts to the children, although she had some telephone contact. She also almost completely failed to comply with the reunification plan. She attended only two of eight parenting skills classes. She moved frequently, including out of state twice. At times she lived with her sister and had no place of her own. She attended only 11 out of 20 anger management classes. She never met with the child support agency to establish what support was required. Finally, she failed, as described, to visit the children in a meaningful way.

The third criteria requires proof that the cause of the deprivation is likely to continue. "[E]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of *present* unfitness is required." (Citations and punctuation omitted; emphasis in original.) *In the Interest of K. M.*, 240 Ga. App. 677, 680 (523 SE2d 640) (1999). "But the trial court is entitled to consider evidence of the mother's past actions in determining whether the deprivation is likely to continue. It is not bound by mere promises to do better in the future." (Citations omitted.) *In the Interest of A. M.*, 259 Ga. App. 537, 542 (578 SE2d 226) (2003).

The above evidence demonstrates that the children were, at the time of the hearing, presently deprived, and that the cause of that deprivation was likely to continue. Neither parent had taken any significant steps to develop relationships with the children or to comply with the other requirements before them. The parents had moved to Florida without taking steps to ensure that the move would not interfere with compliance with the case plan and their relationship with the children. They did not even attend the termination hearing.

Finally, the evidence showed that continued deprivation was likely to cause serious physical, mental, emotional, or moral harm to the children. In addition to the evidence of the mother's neglect in the past, there was also evidence that current contact with the mother was upsetting and disruptive to the children. And, "[t]he juvenile court was authorized to consider the adverse effects of prolonged foster care in determining that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children." (Punctuation and footnote omitted.) *In the Interest of M. C. L.*, 251 Ga. App. 132, 136 (1) (b) (553 SE2d 647) (2001). Here, the older child had spent much of his life in foster care, the younger child had spent all of her life in foster care.

The second part of the test requires a showing that termination is in the best interest of the child. "The same factors which show the existence of parental misconduct or inability can also support a finding that termination of parental rights would be in the best interest of the child. [Cit.]" *In the Interest of R. M.*, 232 Ga. App. 727, 729 (503 SE2d 635) (1998). Again, the parents in this case have virtually abandoned any interest in these children. The foster parents, however, want to adopt the children. Moreover, "the juvenile court was authorized to consider the children's need for a stable home situation and the detrimental effects of prolonged foster care. [Cit.]" *In the Interest of M. L.*, 227 Ga. App. 114, 117 (2) (488 SE2d 702) (1997). We find no error in the trial court's conclusion that termination is in the children's best interests.

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED APRIL 8, 2004.

*Dorothy R. Avera,* for appellants.
*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, James A. Chamberlin, Jr.,* for appellee.