A05A1026. IN THE INTEREST OF S. N. L. et al., children.

(621 SE2d 792)

JOHNSON, Presiding Judge.

The Juvenile Court of Lowndes County terminated the parental rights of the mother of minor children S. N. L., M. D. L. and J. J. M. L. The mother appeals, challenging the sufficiency of the evidence supporting the court's decision to terminate. Contrary to the mother's claims, we find sufficient evidence supporting the juvenile court's decision.

1. The mother claims that the court erred in terminating her parental rights because there is no evidence of present unfitness. The claim is without merit.

In considering whether to terminate parental rights, the court first determines if there is present clear and convincing evidence of parental misconduct or inability.[1] If there is such evidence, the court then decides whether termination of parental rights is in the best interest of the child.[2]

> On appeal from a termination of parental rights, the standard of review is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the parent's right to custody should be terminated. This Court does not weigh the evidence or determine the credibility of witnesses; rather we defer to the

---

[1] OCGA § 15-11-94 (a).
[2] Id.

juvenile court's factfinding and affirm unless the appellate standard is not met.[3]

Viewed in the light most favorable to the juvenile court's disposition, the evidence in this case shows that S. N. L. was born on January 5, 1998, M. D. L. was born on October 3, 1999, and J. J. M. L. was born on April 22, 2001. The children have two different fathers — one is the father of S. N. L., and the other is the father of M. D. L. and J. J. M. L. The mother has never been married to either of the fathers, but she did live for some time with the father of the two younger children.

On July 16, 2001, the mother went out with friends and left the three children at home with the father of M. D. L. and J. J. M. L. The father, whom the mother has said is a "crack" addict, later left the children at home alone while he went to look for the mother. At approximately 11:30 that night, the Department of Family and Children Services (DFCS) received a report from the police officer who had found the children alone in the home. The father was arrested and the mother signed a safety plan with DFCS stating that she would not leave the children unsupervised for any reason.

Just over a month later, on August 24, 2001, DFCS received a referral that the father, who had been the children's primary caretaker, was out of the home and the mother was not providing proper care. The next day, August 25, law enforcement officers went to the home and found that four-month-old J. J. M. L. was in the home alone. The mother was arrested and the children were placed in foster care because of neglect.

The children were later found to be deprived and they were placed in the temporary custody of DFCS. The mother never appealed from that order of deprivation, and plans to reunite her with the children were entered by the court. The reunification plans required the mother to maintain stable housing, provide financial support for the children, demonstrate good parenting and decision-making skills, and complete family counseling and anger management classes.

A psychologist evaluated the mother and determined that she is mildly mentally retarded and illiterate. Due to her intellectual limitations, she would have difficulty with daily living activities, such as following prescription medication directions, cooking, and maintaining a checking account. The psychologist testified by deposition

---

[3] (Citations omitted.) *In the Interest of S. G.*, 271 Ga. App. 776, 778 (611 SE2d 86) (2005).

that the mother would have a difficult time as a parent, and recommended that if she is given custody of the children then DFCS should remain actively involved with them in order to monitor her decision making.

The reunification plans were ultimately changed to a nonreunification plan. The mother had failed to maintain stable housing for herself and the children, she had been incarcerated for an assault and for a probation violation, and she had refused to attend counseling. She also has never held a job and has no checking or savings account. Her only income is a monthly Social Security check of $546.

Under all of the circumstances, including the uncontested finding that the children are deprived, as well as the mother's mental limitations and inability to provide adequately for the children's needs, we find sufficient evidence of parental misconduct or inability.[4] The trial court thus did not err in terminating the mother's parental rights.[5]

2. The mother contends that there is no evidence to support the juvenile court's finding that the father of the two younger children had been the primary caretaker for a considerable length of time during the children's early life. The mother's contention, however, is contradicted by the transcript of the termination hearing because a DFCS caseworker expressly testified that the father had been the children's primary caregiver. The caseworker further explained that the reason DFCS had received the referral about the children's welfare on August 24, 2001, was because the father was out of the house and the mother was not properly caring for the children in his absence.

While the mother did give conflicting evidence by testifying that she was the primary caregiver, it is not our function to determine the credibility of witnesses.[6] Rather, we must defer to the juvenile court's finding of fact,[7] which, contrary to the mother's claim, is supported by evidence.

3. The mother argues that the court erred in finding that her mental deficiency prohibits her from being able to provide for the children because the psychologist did not opine that she could not parent the children. While it is true that the psychologist did not explicitly conclude that she could not parent the children, the psychologist did testify that she is mentally retarded, that she is illiterate, that she would have trouble with basic activities of daily living

---

[4] See OCGA § 15-11-94 (b).

[5] See *In the Interest of S. G.*, supra, 271 Ga. App. at 780-781.

[6] *In the Interest of K. S. W.*, 233 Ga. App. 144, 147 (1) (503 SE2d 376) (1998).

[7] Id.

such as cooking, that she would have an extremely difficult time being a sufficient parent to the children, and that if the children are placed in her custody then DFCS must stay actively involved with them in order to monitor the mother's decision making.

That expert testimony, coupled with the other evidence of the mother's parental misconduct and inability — children deprived and left home alone, repeated incarcerations, failure to maintain suitable housing — supports the juvenile court's finding that her mental deficiency renders her unable to provide adequately for the children's needs.[8]

4. The mother claims that the juvenile court erred in terminating her parental rights because she was not given a meaningful opportunity to reunite with her children. OCGA § 15-11-58 (a) does provide that the juvenile court must make a finding of fact as to whether reasonable efforts were made to preserve and reunify families prior to the placement of a child in the custody of the Department of Human Resources.

> However, OCGA § 15-11-58 does not impose upon termination proceedings the same procedures that apply to disposition orders and recommendations regarding reunification. We do note that such a finding of fact is required in relation to deprivation orders, but the mother did not appeal the juvenile court's findings of deprivation.[9]

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 26, 2005.

*Moore & Voyles, Gregory A. Voyles*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Charles R. Reddick, William D. Edwards*, for appellee.

---

[8] OCGA § 15-11-94 (b) (4) (B) (i).
[9] (Citations omitted.) *In the Interest of F. C.*, 248 Ga. App. 675, 679 (2) (549 SE2d 125) (2001).