A08A0257. IN THE INTEREST OF B. T., a child.
(662 SE2d 656)

ANDREWS, Judge.

Larry Tripp, the father of B. T., born April 19, 2005, appeals from the juvenile court's denial of his motion for new trial[1] following termination of his parental rights,[2] contending that it must be reversed because no reunification plan was ever put in place after B. T. was found deprived.

> On appeal[,] we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.

(Citation and punctuation omitted.) *In the Interest of T. C.*, 282 Ga. App. 659, 660 (639 SE2d 601) (2006).

Viewed in the light most favorable to the juvenile court's determinations, the evidence was that B. T. was removed from the mother Debrah Tripp on January 9, 2006, pursuant to a deprivation complaint. On January 12, 2006, the juvenile court entered a 72-hour hearing order in which it found that B. T. had been removed from the

---

[3] *Alexander v. Jones*, 216 Ga. App. 360, 361 (1) (454 SE2d 539) (1995).

[1] The juvenile courts of this state do have the authority to entertain motions for new trial. *In the Interest of T. A. W.*, 265 Ga. 106, 107 (454 SE2d 134) (1995).

[2] The rights of the mother were also terminated but there is no record of an appeal by her.

mother Debrah Tripp due to "neglect; no housing; no income; [and] prior DFCS involvement." Temporary custody of B. T. was awarded to the Department of Human Services, acting through the Toombs County Department of Family and Children Services (hereafter DFCS). This order was not appealed. Larry Tripp was not present at the 72-hour hearing.

On January 13, 2006, DFCS filed a deprivation petition on behalf of B. T., alleging that the mother had no stable housing or income, had attempted to give B. T. to other families, and left him sitting and sleeping in a car seat for long periods of time. The petition also alleged that four other children of the mother had been adopted.

On January 18, DFCS filed a Notice of Intent to Seek Non-Reunification from the Outset with both parents. The ten-day hearing scheduled for January 23, 2006, was continued until February 6, 2006. At this hearing, Larry Tripp was not present and there was no proof that he had been notified of the hearing. Debrah Tripp stipulated that conditions of deprivation existed and consented to allowing DFCS to maintain custody of B. T. for 12 months. The hearing with regard to the father was continued until March 13, 2006, and then until April 3, 2006. On February 27, 2006, nunc pro tunc to February 6, 2006, the juvenile court entered a temporary custody order finding that the child was deprived "due to lack of stability, lack of income, and lack of parenting skills." That order also directed DFCS to attempt to locate and serve Larry Tripp because there was still no proof of service on him. The order was not appealed.

On April 3, 2006, a permanency hearing was held and the case plan goal for B. T. was nonreunification with the parents and adoption. On April 18, 2006, nunc pro tunc to April 3, 2006, the juvenile court entered its permanency order finding that reasonable efforts to reunite B. T. with his mother were not appropriate and that her rights should be terminated. The order also found that Larry Tripp's whereabouts were unknown to the juvenile court until this hearing when Debrah Tripp provided an address. The hearing was continued as to the father and set for May 8, 2006. DFCS was ordered to locate and serve Larry Tripp and he was finally served on April 19, 2006.

On May 8, 2006, the hearing was held and evidence received, although Larry Tripp did not appear. The juvenile court then entered its final order in the deprivation proceeding, finding that continuation in the home would be contrary to the interest of B. T. and that removal from the home was in B. T.'s best interest, thereby rejecting reunification of B. T. with Larry Tripp.

On June 23, 2006, DFCS filed its Petition to Terminate Parental Rights of the mother and father and scheduled a hearing for August

28, 2006. Larry Tripp was served with this petition on July 7, 2006. The hearing on this petition was repeatedly rescheduled and finally held on November 2, 2006.

Although served, Larry Tripp did not attend this hearing. He was represented by counsel, whose request for a continuance based on his absence was denied. Counsel stated that she had spoken to Larry Tripp previously and he had indicated he would be present.

Larry Tripp had a history of mental illness. He met Debrah Tripp in a homeless shelter in New York after being released from a hospital where he had been treated for his illness. Debrah Tripp testified that she had been in jail for 82 days at the time of the hearing because of her failure to register as a sex offender. She and Larry Tripp were married and living together when B. T. was born, although she and B. T. had been away from Larry Tripp for six months when B. T. was removed from her custody at seven months of age. Larry Tripp never gave her any money to provide for B. T. Although Larry Tripp had three grown children, they were raised by his grandmother. Debrah Tripp did not think B. T. should live with Larry Tripp because he was "unable to keep a place to live. And Larry blows his money." According to her, Larry Tripp gambled, drank, and did drugs. He had also physically abused her in the past and had never provided for B. T. In fact, Larry Tripp had once tried to sell some of B. T.'s formula, which Debrah Tripp had obtained through the WIC program.

Kim Wilds, placement case manager for DFCS, testified that, because Debrah and Larry Tripp were married and Debrah Tripp had four previous involuntary terminations of her parental rights, it was agency policy that no reunification with either parent would be sought. Nonreunification was approved by the juvenile court as to both parents. Even though nonreunification was the plan, visitation with B. T. was offered to both parents. Larry Tripp never visited B. T., provided financial support, made any effort to communicate with the child, or made any inquiry regarding seeking custody of him. Wilds received one telephone call from Larry Tripp in September 2006. He said he had received notice of the upcoming hearing. He inquired about a visit with B. T. and Wilds explained the procedure for such a visit. Larry Tripp said he would try to do that when he was coming back from Dublin after bonding Debrah Tripp out of jail. Wilds never had any further contact with Larry Tripp.

At the conclusion of the November 2 hearing, the juvenile court continued the hearing as to Larry Tripp until November 20, 2006, in order to give him the opportunity to appear. On November 20, Larry Tripp did not appear, although his counsel was present. Counsel again stated that she had spoken to him and he was trying to get there, but "he's poor and broke and can't get here."

The criteria for terminating parental rights are well established.

First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.

(Footnotes omitted.) *In the Interest of V. M. T.*, 243 Ga. App. 732, 735-736 (3) (534 SE2d 452) (2000). See OCGA § 15-11-94 (b) (4).

a. *Deprivation.* As discussed herein, DFCS showed that the conditions upon which the earlier finding of deprivation was based still existed at the time of the termination proceedings. Therefore, the fact that Larry Tripp did not appeal the earlier deprivation order precludes him from challenging the juvenile court's finding of deprivation. *In the Interest of R. N. H.*, 286 Ga. App. 737, 740 (1) (a) (650 SE2d 397) (2007); *In the Interest of R. C. M.*, 284 Ga. App. 791, 798 (III) (1), n. 6 (645 SE2d 363) (2007); *In the Interest of A. K.*, 272 Ga. App. 429, 434 (1) (a) (612 SE2d 581) (2005).

b. *Lack of parental care or control as cause of the deprivation.* In determining whether a noncustodial parent's lack of care or control is the cause of the deprivation, the juvenile court is required to consider

whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) [t]o develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) [t]o provide for the care and support of the child as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the child with the parent or parents.

OCGA § 15-11-94 (b) (4) (C).

Here, Larry Tripp never sent a card, letter, or present to his child in the period prior to the filing of the petition for termination. Although he made one inquiry regarding how to set up visitation, he failed to follow through and never visited B. T. Except for that one telephone contact, Larry Tripp has failed to contact DFCS since B. T.

was removed from the home and failed to keep the DFCS caseworkers informed of his whereabouts or his contact information. Larry Tripp has not paid any child support.

c. *Cause of the deprivation is likely to continue.* The record also contains clear and convincing evidence that the cause of B. T.'s deprivation was likely to continue or would not likely be remedied. OCGA § 15-11-94 (b) (4) (A) (iii).

"Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Citation, punctuation and footnote omitted.) *In the Interest of M. E. M.*, 272 Ga. App. 451, 454 (612 SE2d 612) (2005). Larry Tripp's failure to have any meaningful contact or visits with B. T., failure to pay any support toward his care, and failure to contact or keep DFCS aware of his whereabouts all support the trial court's finding that the conditions of deprivation are likely to continue. See id. at 454-455; *In the Interest of A. C.*, 230 Ga. App. 395, 397-398 (1) (496 SE2d 752) (1998).

Larry Tripp argues that the failure of DFCS to devise a reunification plan for him regarding B. T. precludes a finding that the conditions of deprivation are likely to continue, based on *In the Interest of B. C.*, 250 Ga. App. 152, 155 (1) (550 SE2d 707) (2001). In that case, however, the mother had not been given the chance to get out of jail and have "an opportunity to file for a re-hearing *concerning the question of deprivation*" as the juvenile court had stated would occur. (Punctuation omitted; emphasis supplied.) Id. at 153. Rather, immediately following the entry of the deprivation order, the petition to terminate was filed. Under these particular circumstances, this Court reversed the termination of the mother's rights to B. C.

"[DFCS] is not obligated in every case to create a plan for reunification. See generally *In the Interest of V. S.*, 230 Ga. App. 26, 30-31 (495 SE2d 142) (1997); *In the Interest of A. M. B.*, 219 Ga. App. 133, 136-137 (464 SE2d 253) (1995)." *In the Interest of T. B.*, 267 Ga. App. 484, 488 (3) (600 SE2d 432) (2004). OCGA § 15-11-58 does not impose upon termination proceedings the same procedures that apply to disposition orders and recommendations regarding reunification. *In the Interest of T. C.*, 282 Ga. App. 659, 662 (1) (639 SE2d 601) (2006); *In the Interest of S. N. L.*, 275 Ga. App. 600, 603 (4) (621 SE2d 792) (2005); see *In the Interest of T. W. O.*, 283 Ga. App. 771, 779 (2) (643 SE2d 255) (2007).

d. *Likelihood of harm.* The record also supports the juvenile court's determination that continued deprivation was likely to cause serious harm to B. T. OCGA § 15-11-94 (b) (4) (A) (iv). There is no evidence of any parental bond between Larry Tripp and B. T., nor is

there any evidence of effort on the part of Larry Tripp to form any. He did not even attend hearings which had specifically continued in order to allow him to make his case regarding B. T. This evidence, particularly in light of his failure to maintain meaningful contact and support for his child, authorized the juvenile court to find that B. T. would suffer serious harm if returned to his father. *In the Interest of A. C.*, supra, 230 Ga. App. at 398 (1); see also *In the Interest of D. T. C.*, 248 Ga. App. 788, 792 (2) (d) (548 SE2d 11) (2001); *In the Interest of J. K.*, 239 Ga. App. 142, 146 (1) (520 SE2d 19) (1999).

Finally, the second part of the test for terminating parental rights is to determine whether termination is in the child's best interest. *In the Interest of V. M. T.*, supra. The juvenile court may consider the child's need for a stable home environment and the detrimental effects of prolonged foster care in making this decision. *In the Interest of J. S. H.*, 266 Ga. App. 865, 869 (598 SE2d 545) (2004). The same factors that show parental misconduct or inability can also support a finding that termination of parental rights would be in the child's best interest and do so here. *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 615 (2) (629 SE2d 822) (2006).

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED MAY 21, 2008.

*Smith & Cannon, Kimberly R. Cameron*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Jennifer T. McComas*, for appellee.