534 S.E.2d 457 (2000)
243 Ga. App. 727
In the Interest of A.D., a child.
No. A00A0118.
Court of Appeals of Georgia.
April 28, 2000.
McGee & McGee, James B. McGee III, Waycross, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Laura W. Hyman, *458 Assistant Attorneys General, Charles R. Reddick, for appellee.
MILLER, Judge.
Appellant, the natural mother of the child A. D., appeals from the judgment of the juvenile court terminating her parental rights in A.D. Her sole enumeration of error challenges the sufficiency of the evidence and argues only that she did nothing harmful or neglectful.
The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.[1]
Viewed in the proper light, the evidence showed the following.
A.D. was born on April 18, 1989. Two older siblings, C.D. and another, had been in the custody of the Department of Family & Children Services since 1984. In 1993, A.D. and two other siblings were found to be deprived and placed in the temporary custody of the Department, based upon evidence that their father had sexually molested C. D., then age 13, while she was visiting. At the same time, four-year-old A.D. showed a case-worker where the father touched her private parts. C.D. told her mother what happened, but appellant, just home from the hospital and paralyzed on one side after a seizure, did nothing to stop it.
After repeated extensions of temporary custody, in May 1998, the Department petitioned for termination of the parental rights of appellant and her husband, in order to place A.D. for adoption. The alleged grounds were the parents' refusal to cooperate with the reunification case plans, the history of sexual abuse in the family, and the parents' inability to provide care and supervision.
Appellant did not testify at the hearing. Dr. Wallace A. Kennedy, a clinical psychologist, administered a series of psychological tests to appellant and evaluated her as a passive/dependent person who was overweight with serious health problems, including having had a light stroke. Dr. Kennedy concluded that appellant was "utterly dominated by her husband" and that while appellant had good intentions she was "not socially and emotionally competent." Appellant had more potential native intelligence that she employed after long-term domination, but she was preoccupied with her own health and her total and absolute dependence on her husband. Appellant's passive/dependent personality disorder was not a treatable mental disease, i.e., it cannot be medicated.
Appellant showed very low vigilance or alertness and little awareness of what she would have to do to protect her children from her husband's indecent liberties. She did not believe any sexual abuse occurred because her husband denied it. If the Department attempted any intrusive behavioral management such as placing a full-time homemaker with the family, appellant would not change her own behavior but would simply transfer her dependence to that homemaker.
Dr. Kennedy thought A.D. was a good candidate for adoption because of her young age and her success in foster care. The alternative to termination was "foster care drift," where children who remain in foster care over extended periods are unable to put down roots, to make friends, or to develop any notion of permanence, which has a seriously deforming impact on children.
Jim Lanier, a licensed clinical social worker, interviewed nine-year-old A.D. and concluded it would be improper to remove A.D. from foster care where she is flourishing. A.D.'s express desire was to stay where she was. She absolutely did not want to go back and live with her natural parents. Lanier recommended termination of parental rights and placement of A.D. in a safe, stable, and *459 permanent home. In foster care, A.D. has improved her reading tremendously and developed a concept of belonging to a family.
The initial reunification plan did not require the father to leave the home; rather, he volunteered to remove himself, if that would result in the return of A.D. But he never followed through with this voluntary separation. Dr. Kennedy was not optimistic that the father would readily accept intrusive supervision.
Termination of parental rights requires a clear and convincing showing that the [child is] deprived due to parental misconduct or inability which is likely to continue or is not likely to be remedied, thereby causing serious physical, mental, emotional, or moral harm to the [child]. [Cit.] Lack of proper parental control may be shown by evidence of the parent's past physical, mental, or emotional neglect of the child or of another child. OCGA § 15-11-81(b)(4)(B)(v).[2]
Here, there is ample proof that appellant was not physically or emotionally capable of affording A.D. proper parental care and control, and that this situation cannot be remedied medically or addressed effectively by the Department through behavior management. This is a clear and convincing evidentiary basis supporting the juvenile court's determination that the child remains deprived owing to ongoing parental inability.[3] The opinions of the clinical psychologist and the licensed social worker clearly and convincingly support the conclusion that termination of appellant's parental rights was in the best interest of A.D.[4]
Judgment affirmed.
POPE, P.J., and SMITH, P.J., concur.
NOTES
[1] (Citations and punctuation omitted). In the Interest of K.S.W., 233 Ga.App. 144, 147(1), 503 S.E.2d 376 (1998).
[2] In the Interest of W.M., 239 Ga.App. 319, 321(2), 521 S.E.2d 230 (1999). Accord In the Interest of M.E.C., 228 Ga.App. 9, 12(1)(b)(2), 491 S.E.2d 107 (1997) (parent's disbelief of allegations of sexual abuse can evince physical, mental, and emotional neglect amounting to deprivation). See also In the Interest of J.C., 242 Ga. 737, 738(1), 251 S.E.2d 299 (1978) (the State's compelling interest in the welfare of children authorizes termination of parental rights of mentally deficient parents incapable of caring for children).
[3] W.M., supra, 239 Ga.App. at 322(2), 521 S.E.2d 230.
[4] In the Interest of A.W., 198 Ga.App. 391, 392, 401 S.E.2d 560 (1991).