A06A0812. IN THE INTEREST OF J. G.-S., a child.

(630 SE2d 615)

MILLER, Judge.

The Juvenile Court of Paulding County terminated the parental rights of the mother of J. G.-S. The mother appeals, contending that the State did not show by clear and convincing evidence that the termination was warranted. We find no error and therefore affirm.

A juvenile court's termination of parental rights is a two-step process:

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Footnotes omitted.) *In the Interest of T. F.*, 250 Ga. App. 96, 97-98 (1) (550 SE2d 473) (2001). See OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv). "On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Footnote omitted.) *In the Interest of F. C.*, 248 Ga. App. 675 (549 SE2d 125) (2001).

1. *Parental Misconduct or Inability.* Construing the evidence in the light most favorable to the juvenile court's findings, we address each of the relevant factors in turn.

(a) *Deprivation.* In September 2002, the juvenile court found that J. G.-S. was deprived based on evidence that the mother had left her in the care of a non-relative and was dependent on others for housing. The child was allowed to return to the mother's custody, provided that the mother cooperate with the Paulding County Department of Family and Children Services (the "Department").

In December 2002, the juvenile court again found that J. G.-S. was deprived after hearing evidence that the mother left her under the care of two teenage boys who fled upon the arrival of the police, and that the family home was filthy with garbage and dog feces. The court ordered that the child be placed in the temporary legal custody

of the Department pending a termination hearing. As this order was not appealed, the mother was bound by its findings of fact for purposes of the termination hearing. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

(b) *Lack of Parental Care or Control.* The December 2002 court order determining that J. G.-S. was deprived also found that she was "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [her] physical, mental or emotional health or morals." Since the order was not appealed, the mother was bound by this finding for purposes of the termination hearing. *In the Interest of R. G.*, supra, 249 Ga. App. at 93 (1) (a).

(c) *Lack of Care or Control Likely to Continue.* Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if a child is returned to the parent. See *In the Interest of A. A.*, 252 Ga. App. 167, 172 (2) (c) (555 SE2d 827) (2001). As a result, there was sufficient evidence to authorize the juvenile court's finding that the lack of proper parental care or control was likely to continue.

The evidence also reveals that the mother failed to achieve many of the goals set out in her reunification plan, including missing approximately half of her scheduled visits with the child. In addition, evidence was presented that the mother's judgment and ability to care for the child had not improved during the 32-month period that the child was in foster care. During such time, she failed to maintain a job, failed to provide adequate financial support for J. G.-S., failed to consult with a psychiatrist, failed to obtain a driver's license, and failed to secure stable, adequate housing. In addition, during the period that J. G.-S. was in foster care, her mother gave birth to two more children and was struggling to support them without any assistance from their biological father.

Despite evidence that the mother was taking classes to obtain her GED and had an offer of employment that she planned to accept following the termination hearing, such effort is not conclusive of parental fitness in light of her history of neglect. See *In the Interest of A. G.*, 253 Ga. App. 88, 90-91 (1) (c) (558 SE2d 62) (2001).

(d) *Serious Harm to the Child.* An expert in child psychology testified that, given the mother's limited and sporadic contact with J. G.-S. during the period that she has been in foster care, the child would be harmed by continuing to postpone a permanency arrangement, such as adoption by her foster parents. The juvenile court was authorized to find from this evidence that continued deprivation was likely to cause serious physical, mental, emotional, or moral harm to the child. See, e.g., *In the Interest of N. M. H.*, 252 Ga. App. 353, 358 (556 SE2d 454) (2001) (holding that "[c]hildren need permanence of

home and emotional stability or they are likely to suffer serious emotional problems") (punctuation and footnote omitted).

As a result of the foregoing, we conclude that clear and convincing evidence supported the juvenile court's finding of parental misconduct or inability.

2. *Best Interest of the Child.* When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a). The same evidence showing parental misconduct or inability may, and here does, establish that the child's best interest required the termination of the mother's rights. See *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998).

Specifically, the juvenile court found that in the 32 months that J. G.-S. was in foster care, the mother had minimal contact with her, did not support her financially or emotionally, and "has remained steadfast in her refusal to address her mental health needs." In addition, there was evidence that the child had become "extremely attached" to her foster parents and that her foster parents were committed to adopting her and giving her a permanent home. Thus, there was no abuse of discretion when the juvenile court found that the child's best interest would be served by terminating the mother's parental rights. See *In the Interest of Z. B.*, 252 Ga. App. 335, 339 (2) (556 SE2d 234) (2001).

Since a rational trier of fact could have found clear and convincing evidence of the mother's misconduct or inability, and that termination of parental rights was in the best interest of the child, the juvenile court did not err in terminating the mother's rights as to J. G.-S.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED APRIL 26, 2006.

*Jana L. Evans*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Joseph T. Justice*, for appellee.