A07A0054. IN THE INTEREST OF M. D. L. et al., children.

(646 SE2d 331)

PHIPPS, Judge.

The father of M. D. L. and L. A. L. appeals a juvenile court order terminating his parental rights to the two boys.[1] In his sole claim of error, he challenges the sufficiency of the evidence supporting termination. For reasons that follow, we find the evidence sufficient and affirm.

On appeal from an order terminating parental rights, we construe the evidence in a light most favorable to the juvenile court's ruling.[2] We do not weigh the evidence or resolve credibility issues, but merely determine whether a "rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated."[3]

Viewed in this manner, the evidence shows that eight-year-old M. D. L. and two-year-old L. A. L. were removed from their parents' home pursuant to a shelter care order on May 4, 2004. The juvenile court subsequently found the children to be deprived and awarded temporary custody to the Department of Family and Children Services ("DFCS"). The juvenile court noted that the father was, at that point, incarcerated. In a supplemental order, the juvenile court incorporated the reunification case plan prepared by DFCS and directed the father to substantially comply with the plan.

During an October 28, 2004 judicial review, the juvenile court found that the father had been released from jail in August 2004, had tested positive for amphetamines, had refused to comply with the reunification case plan, and had not visited the children in six weeks. Concluding that the mother also had not made sufficient progress on her case plan, the juvenile court ordered that the children remain in

---

[1] The juvenile court also terminated the parental rights of the boys' mother. The mother's rights, however, are not at issue in this appeal.

[2] See *In the Interest of J. J.*, 259 Ga. App. 159 (575 SE2d 921) (2003).

[3] Id. at 159-160 (citation omitted).

DFCS custody and that the case plan be changed to a concurrent plan for reunification and nonreunification.

In May 2005, the juvenile court again found that the children were deprived, that the parents had not complied with the case plan, and that the parents had neither stable housing nor proof of employment. The juvenile court thus continued DFCS's custody over the boys. In a separate order incorporating a new case plan and changing the case plan goal to nonreunification, the juvenile court determined that the father had tested positive on numerous drug screens, had failed to complete his psychological evaluation, and had not provided proof of a stable home or adequate housing. At a subsequent judicial review in October 2005, the juvenile court again determined that the father had made little progress on his case plan and noted that he had been incarcerated since June 2005.

DFCS petitioned to terminate the parental rights of the biological mother and father in August 2005. At the termination hearing, Tina Lester — the DFCS caseworker assigned to the case — confirmed that the children were removed from the home in May 2004 and placed in DFCS custody. Lester further testified that after the father's release from jail in August 2004, he continued to test positive for drugs and did not provide DFCS proof of stable income or housing. He also failed to complete a recommended drug treatment program, and he presented no evidence to DFCS that he attended the parenting classes required by the case plan. Moreover, although DFCS offered the father services to help him achieve his case plan goals, he did not finish any portion of the plan.

Lester also testified that she visited the children in their foster care placement, where they had lived since May 2004. According to Lester, the children were well-adjusted and thriving. She asserted that M. D. L. wanted his foster parents' home to be his permanent home and that L. A. L. "pretty much sees [the foster parents] as his parents." Documents admitted into evidence reveal that the foster parents wished to adopt the boys.

Before terminating parental rights, a juvenile court must engage in a two-step process:

> First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's

physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.[4]

On appeal, the father argues that the State failed to present sufficient evidence to terminate his parental rights. He does not specifically challenge the evidence relating to any particular factor in the two-step termination test. Rather, he argues that the testimony offered by Lester — the only witness at the termination hearing — consisted entirely of hearsay and cannot support a termination order. We disagree.

The father never objected to Lester's testimony as hearsay. Moreover, although another DFCS employee worked on the case before Lester, Lester was the assigned caseworker at the time of the hearing, and the record does not show that she lacked personal knowledge of the facts in the above-described testimony.[5] Furthermore, the majority of those facts were memorialized in the juvenile court's previous orders, which the father never appealed and were admitted without objection at the termination hearing. Under these circumstances, the State's case cannot be dismissed as hearsay.[6]

We must turn, therefore, to the two-part test for termination proceedings. As discussed below, a reasonable trier of fact could find termination appropriate here.

1. *Parental Misconduct or Inability.*

(a) *Deprivation/lack of parental care and control.* In several prior orders, the juvenile court found the children to be deprived and determined that such deprivation resulted from a lack of proper parental care and control. With respect to the father, the trial court specifically found that he neglected and failed to supervise the boys. The record contains no evidence that the father appealed these findings and conclusions, which are binding and establish the first two factors in the termination proceeding.[7]

(b) *Cause of the deprivation is likely to continue.* The evidence shows that for over one year before the State filed the termination

---

[4] Id. at 161 (citation omitted).

[5] Compare *In the Interest of A. A.*, 252 Ga. App. 167, 168 (1) (555 SE2d 827) (2001) (juvenile court erred in allowing DFCS caseworker who had been assigned to the case one week before the termination hearing to read into evidence a hearsay summary of the prior caseworker's case file).

[6] See *In the Interest of J. G.-S.*, 279 Ga. App. 102, 103 (1) (b) (630 SE2d 615) (2006) (factual findings in unappealed juvenile court order binding for purposes of termination hearing); *In the Interest of A. C. O.*, 269 Ga. App. 667, 672 (2) (605 SE2d 77) (2004) (even if some testimony constitutes hearsay, no harm where other admissible evidence establishes the same facts); *In the Interest of O. J.*, 257 Ga. App. 1, 2 (1) (a) (i) (570 SE2d 79) (2002) (juvenile court may take judicial notice of prior orders admitted at the termination hearing).

[7] See *In the Interest of J. G.-S.*, supra at 102-103 (1) (a), (b).

petition, the father made little or no progress on his case plan, and nothing indicates that he was trying to accomplish any of his goals at the time of the hearing. Moreover, he failed to maintain stable housing and employment, tested positive for drug use, did not complete required classes, failed to visit the children during at least one six-week period, and spent time in prison. Such circumstances supported the trial court's conclusion that the father's lack of parental care and control is likely to continue.[8] As we have found, "[e]vidence of past conduct may be considered in determining whether the deprivation is likely to continue if a child is returned to the parent."[9]

(c) *Harm from continued deprivation.* In determining the likely harm to a child, the juvenile court may take into account the same facts that demonstrate continued deprivation.[10] The juvenile court may also consider the adverse effects of prolonged foster care, as well as the child's need for a permanent home and emotional stability.[11] The facts described above — including the father's failure to comply with the case plan, his drug use, his inability to obtain stable employment and housing, and the children's bond with their foster parents — authorized the trial court's determination that continued deprivation and reunification with the father will likely cause the boys serious physical, mental, emotional, or moral harm.[12]

2. *The Best Interests of the Children.* These same facts similarly support the juvenile court's finding that termination is in the best interests of the children. Again, the father made little or no effort to comply with the case plan, tested positive for drugs, spent time in jail, and provided no proof to DFCS that he could maintain a stable home for the children. In contrast, the boys are thriving with their foster parents, who wish to adopt them. Under these circumstances, we find no error in the juvenile court's conclusion that termination is in the children's best interests.[13]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[8] See id. at 103 (1) (c); *In the Interest of A. K.,* 272 Ga. App. 429, 436 (1) (c) (612 SE2d 581) (2005); *In the Interest of F. C.,* 248 Ga. App. 675, 678 (1) (549 SE2d 125) (2001); see also OCGA § 15-11-94 (b) (4) (C) (iii) (in determining whether a child who is not in parent's custody lacks proper parental care and control, the court shall consider whether parent has, without justifiable cause and for a period of at least one year prior to filing of termination petition, failed to comply with a court-ordered reunification plan).

[9] *In the Interest of J. G.-S.,* supra at 103 (1) (c) (citation omitted).

[10] See *In the Interest of J. S. T. S.,* 273 Ga. App. 221, 225 (614 SE2d 863) (2005).

[11] See *In the Interest of A. K.,* supra at 438 (1) (d).

[12] See id. at 437-438; *In the Interest of F. C.,* supra.

[13] See *In the Interest of J. G.-S.,* supra at 104 (2); *In the Interest of F. C.,* supra.

DECIDED MAY 11, 2007.

*Sexton, Key & Hendrix, Joseph S. Key*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Wilson H. Bush*, for appellee.