A08A0152. IN THE INTEREST OF K. B. E., a child.
(661 SE2d 217)

MIKELL, Judge.

The father of three-year-old K. B. E. appeals the order terminating his parental rights, contending in his sole enumeration of error that the evidence is insufficient to support the juvenile court's finding that the cause of the child's deprivation is likely to continue. We affirm.

When reviewing an order terminating parental rights, we construe the evidence in the light most favorable to the appellee and determine "whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost."[1] We do not weigh the evidence or resolve credibility disputes but defer to the juvenile court's factfinding.[2] Viewed in its proper light, the evidence shows that, pursuant to a court order, the Floyd County Department of Family and Children Services (the "Department") assumed custody of K. B. E. when he was four days old primarily because his parents abandoned him. Appellant was incarcerated, and the mother[3] had tested positive for drugs at the child's birth and had lost custody of four other children. K. B. E. was placed in a foster home, and the foster mother testified at the termination hearing that the child had multiple health

---

[1] (Citation and punctuation omitted.) *In the Interest of A. H.*, 278 Ga. App. 192 (628 SE2d 626) (2006).

[2] *In the Interest of K. D.*, 285 Ga. App. 673, 674 (647 SE2d 360) (2007).

[3] The court also terminated the mother's parental rights, but she does not appeal.

problems. As an infant, he required a heart monitor due to breathing problems; currently, he has asthma and requires breathing treatments twice daily; and he has food allergies, including lactose intolerance, that require treatment by a gastroenterologist. The foster mother testified that she has to administer extra breathing treatments when the child struggles for breath, and that she is trained to care for him because she is a licensed practical nurse. The foster mother testified that in addition to K. B. E., she and her husband have four adopted children and another child in long-term foster care. Finally, she testified that K. B. E. has had no contact with his birth mother; that appellant has only seen the child at panel reviews and has never contacted the foster mother; that K. B. E. gets along well with the other children in the household; and that she and her husband want to adopt him.

The case manager testified that the Department had implemented a case plan, which required appellant to provide for the child's basic needs, form a bond with him, obtain stable housing, obtain and maintain financial stability, resolve his legal issues, remain free from incarceration, and follow the conditions and regulations of his probation/parole. The case manager testified that appellant had not met any of the goals of his case plan because he had been incarcerated for most of the child's life; that during the time appellant was free, which included at least three weeks prior to the hearing, he did not contact the Department or ask to see the child; that the case manager has given appellant her contact information; that she has never received support, letters, or inquiries from appellant about the child; that the child receives speech therapy and is bonded to his foster family; and that appellant has two other children who have never lived with him.

The record also shows that, when K. B. E. was born, appellant was incarcerated for driving with a suspended license and making false writings; he was sentenced to five years for the second offense, all of which was probated except for ten days. Appellant testified that he remained in jail for months awaiting a bond; when he got out, he violated probation by failing to pay child support, among other things, so he was incarcerated for a year; and that he was released approximately two or three weeks before the termination hearing. Appellant testified that he works for his brother, who owns a remodeling and roofing business; that before his incarceration, he worked for a tire company for seven years; and that he has arranged to rent a house. On cross-examination, appellant testified that he lives with his mother; that he has not called the case manager since his release from jail because he was in the hospital with strep throat, tonsilitis, and a shoulder injury; that despite being in the hospital for only a few days since his release, he has not sought visitation with K.

B. E.; that he has not paid utility deposits for the house he intends to rent because he does not have the money; that during the brief period he was out of jail, he never called the Department to ask to visit with the child; that he believed he was ready to take care of the child; that since K. B. E. was placed in a foster home, appellant has seen him perhaps three times. Appellant also testified that he earns $9 per hour and hopes that his brother will give him a raise in order to enable appellant to pay for all of his and K. B. E.'s living expenses, including day care.

Before terminating parental rights, a juvenile court must employ a two-prong test.[4]

> First, the juvenile court must make a finding of parental misconduct or inability, which is proved by clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[5]

If these four factors are shown to exist by clear and convincing evidence, then the court must also determine whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home."[6]

The father enumerates as error only the trial court's finding that the deprivation is likely to continue or will not be remedied. He does not challenge the court's findings as to the other three factors required to show parental misconduct or inability or the court's determination that termination would be in the child's best interest.

"Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue."[7] As the juvenile court correctly noted, a parent's conviction of a crime and prior incarceration does not compel the termination of parental rights, but can support such a ruling when sufficient aggravating circumstances are shown to

---

[4] OCGA § 15-11-94 (a); *In the Interest of K. A. B.*, 285 Ga. App. 537, 540 (646 SE2d 736) (2007).

[5] (Footnote omitted.) *In the Interest of K. A. B.*, supra. OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

[6] (Punctuation omitted.) *In the Interest of C. M.*, 275 Ga. App. 719, 720 (621 SE2d 815) (2005), citing OCGA § 15-11-94 (a).

[7] (Citation omitted.) *In the Interest of S. B.*, 237 Ga. App. 692, 694 (515 SE2d 209) (1999).

exist.[8] These aggravating circumstances may include, in addition to a history of repeated jail incarcerations,[9] "whether the incarcerated parent has made an effort to communicate with the child and, despite imprisonment, maintain a parental bond in a meaningful, supportive and parental manner."[10] In the case at bar, the juvenile court was authorized to find that appellant never attempted to communicate with the child, which "demonstrates a lack of parental commitment and thus a likelihood that the deprivation will continue."[11] Moreover, appellant never provided any financial support for the child, and "Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income."[12] The failure to comply with goals in the reunification case plan is also considered to be an aggravating factor, and one which may be considered in determining whether the cause of deprivation is likely to continue.[13] Here, the case manager testified that appellant had not met the goals of his case plan because he failed to stay out of jail; by his own admission, appellant violated the terms of his probation at least twice.[14]

Regarding appellant's claim that he was ready to parent K. B. E. because he had found a house and a job, the juvenile court was entitled to "place more weight on negative past facts than promises of future conduct."[15] "Further, what weight to give recent improvements is a question for the trier of fact. In considering a parent's claims of recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation."[16] And the juvenile court may "assign much less

---

[8] *In the Interest of M. C. L.*, 251 Ga. App. 132, 134 (1) (a) (553 SE2d 647) (2001). Accord *In the Interest of M. D. N.*, 289 Ga. App. 499, 503 (1) (657 SE2d 594) (2008).

[9] *In the Interest of J. F.*, 283 Ga. App. 759, 765-766 (c) (642 SE2d 434) (2007).

[10] (Punctuation and footnote omitted.) *Stills v. Johnson*, 272 Ga. 645, 651 (3) (533 SE2d 695) (2000).

[11] *In the Interest of A. T. H.*, 248 Ga. App. 570, 573 (1) (547 SE2d 299) (2001) (failure to appear for scheduled visitations demonstrates likelihood that deprivation will continue).

[12] (Citation and punctuation omitted.) *In the Interest of D. D. B.*, 282 Ga. App. 416, 419 (1) (638 SE2d 843) (2006).

[13] See *In the Interest of K. B.*, 252 Ga. App. 808, 809-810 (556 SE2d 922) (2001) (failure to provide parental care and support considered an aggravating circumstance). Accord *In the Interest of T. A. M.*, 280 Ga. App. 494, 497-498 (2) (634 SE2d 456) (2006).

[14] See *In the Interest of T. G. Y.*, 279 Ga. App. 449, 451-452 (1) (a) (i) (631 SE2d 467) (2006) (failure to meet case plan goals cannot be excused by imprisonment; a father " 'cannot object to the natural consequences brought about by his own voluntary commission of criminal acts' ") (citation omitted).

[15] (Punctuation and footnote omitted.) *In the Interest of A. C.*, 280 Ga. App. 212, 217 (1) (c) (633 SE2d 609) (2006).

[16] (Citation and punctuation omitted.) *In the Interest of M. N. R.*, 282 Ga. App. 46, 47 (637 SE2d 777) (2006).

weight to such assertions of sudden parental fitness when compared to the other evidence."[17] In the case at bar, appellant had been employed for less than two weeks on the hearing date; still lived with his mother; could not articulate a realistic plan for the support of his child; and had failed to meet the goals of his case plan. Under these circumstances, the juvenile court was authorized to discount the father's recent efforts and find by clear and convincing evidence that the cause of the child's deprivation is likely to continue.[18]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

## DECIDED APRIL 11, 2008.

*Steven V. Bennett*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Holly A. Bradfield*, for appellee.

---

[17] (Citation and punctuation omitted.) *In the Interest of D. D. B.*, supra at 418 (1).

[18] See id. at 418-419 (1); accord *In the Interest of A. H.*, 289 Ga. App. 121, 123-124 (1) (a) (656 SE2d 254) (2008).