665 S.E.2d 8 (2008)
In the Interest of A.M.H. et al., children.
No. A08A0696.
Court of Appeals of Georgia.
June 26, 2008.
*9 Joshua D. Earwood, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Virginia B. Fuller, Assistant Attorney General, James E. Goad, for appellee.
SMITH, Presiding Judge.
The father of four-year-old A.M.H. and three-year-old S.R.A.H. appeals from the termination of his parental rights. On appeal, he contends that there was insufficient evidence that the cause of the deprivation was likely to continue. He further claims that the termination was not in the best interests of the children.[1] We disagree and affirm.
The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.
(Citations, punctuation and footnote omitted.) In the Interest of A.D., 243 Ga.App. 727, 728, 534 S.E.2d 457 (2000). So viewed, the evidence shows that the children were removed from the mother's custody in May 2006 when the mother and her live-in companion tested positive for drugs. The mother's housing was unstable, and the father's whereabouts were unknown. The children were placed in foster care. In June 2006, the juvenile court found that the children were deprived because the mother had inadequate housing, unstable employment, and had been abusing cocaine. In December 2006, the court entered a similar order with regard to the father, finding that the children were deprived because he was incarcerated, had not legitimated the children, and was involved in an incident of domestic violence.
In March 2007, the juvenile court approved a case plan for reunification that required the father to legitimate the children, become and remain drug and alcohol free, complete a drug and alcohol assessment, obtain and maintain safe housing and a stable income, resolve all pending legal issues and commit no further violations of the law, take parenting classes, refrain from domestic violence and submit to an anger management/domestic violence assessment, establish and maintain a bond with the children, and provide child support in an amount equal to 17 percent of his gross income.
The father legitimated both children in February 2007, but in a June 2007 order, the juvenile court noted that the father had been re-incarcerated, had not taken parenting classes, had not visited with the children on a regular basis, had not maintained stable housing or income, and had not paid child support. In July 2007, the Department of *10 Family and Children Services (DFACS) filed a petition to terminate the father's parental rights because he failed to complete the terms of his case plan, including the requirement that he remain drug free.
At the hearing on the termination petition,[2] a DFACS caseworker testified that although the father legitimated the children, he failed to complete the goals of his case plan including the requirement that he remain drug free. She stated that the father tested positive for drugs in February 2007 and in March 2007. The father failed to attend parenting classes and was again arrested in April 2007. He had previously been incarcerated from November 2006 to January 2007. The father also failed to submit to an anger management/domestic violence assessment and failed to resolve his pending legal issues. She stated further that although the children had been in DFACS care since May 2006, the father did not visit the children until February 2007 and thereafter only visited with them on three occasions before April 2007. DFACS scheduled sixteen visits for the father to see the children when he was out of jail, but the father only attended three of those visits. The father also failed to pay child support regularly and submitted only one payment in the amount of $139.44 jointly with the mother. She noted that the children had been placed together, that they were bonded to one another, and that a potential adoptive family had visited with the children.
The father testified that he was incarcerated at the time of the hearing, and had been in custody since April 2007 for a probation violation, driving with a suspended license, and possession of methamphetamine. He admitted that when the children were placed in DFACS care in May 2006, he did not inform the Department that he was their biological father until November 2006 because he had an outstanding warrant for his arrest. He stated that he was also incarcerated from December 2006 until February 2007. He conceded that he had tested positive for drugs when he was out of jail and that he had missed some visitation with the children. He admitted that he had been incarcerated for a third of A.M.H.'s life, and for half of S.R.A.H.'s life. He also admitted that he had a problem with drugs, but asserted that he would remain drug free when released from jail and that he was to be released in October 2007.
The juvenile court's termination of the father's parental rights is a two-step process. The court must first find parental misconduct or inability by clear and convincing evidence. Parental misconduct or inability exists when
(i) The child is a deprived child, as such term is defined in Code Section 15-11-2;
(ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;
(iii) Such cause of deprivation is likely to continue or will not likely be remedied; and
(iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.
OCGA § 15-11-94(b)(4)(A)(i)-(iv). "If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering [the child's] physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home." (Citations, punctuation and footnotes omitted.) In the Interest of A.C., 272 Ga.App. 165, 166, 611 S.E.2d 766 (2005).
In his appeal, the father argues only that the evidence was insufficient to sustain the juvenile court's finding that the cause of the deprivation was likely to continue and that the termination was in the best interests of the children.
1. The father first contends that there was insufficient evidence to sustain a finding that the cause of the deprivation was likely to continue. He argues that he made an effort to complete his case plan and that he was limited by his incarceration.
Though a parent's incarceration does not always compel the termination of parental rights, it can support a termination when there are sufficient aggravating circumstances present. One of the aggravating circumstances that may be considered is whether the incarcerated parent has made *11 an effort to communicate with the child and, despite imprisonment, maintain a parental bond in a meaningful, supportive, and parental manner.
(Citations, punctuation and footnotes omitted.) In the Interest of M.D.N., 289 Ga.App. 499, 503(1), 657 S.E.2d 594 (2008). In this case, the father only attended three of sixteen scheduled visits with the children, and his whereabouts were not even known to DFACS until November 2006, six months after the children came into DFACS care. The evidence showed further that the father intentionally evaded communication with DFACS concerning the children so that only the mother was responsible for working on a case plan and because he thought he had warrants out for his arrest. Further, there was no evidence presented that the children had a bond with their father, who had been incarcerated for nine out of the twelve months prior to the termination hearing. The father also failed to pay child support as required by his case plan with the exception of a one-time joint payment with the mother for $139.44. See In the Interest of K.B.E., 291 Ga.App. 75, 78, 661 S.E.2d 217 (2008) (failure to comply with reunification case plan is also an aggravating factor). Under these circumstances, the trial court was authorized to find that the cause of the childrens' deprivation is likely to continue. See id. at 79, 661 S.E.2d 217.
2. The father argues that termination was not in the best interests of the children because DFACS failed to prepare an adoptive placement and the children could languish in foster care. But "the issue of placement is separate and apart from that of termination." (Citation omitted.) In the Interest of U.G., 291 Ga.App. 404, 408(1), 662 S.E.2d 190 (2008). The question of the children's placement is irrelevant to a determination of whether the children's best interests are served by termination of the father's parental rights. Id.
Judgment affirmed.
MIKELL and ADAMS, JJ., concur.
NOTES
[1] We note that although the arguments presented by the father in his brief are appropriate, his enumeration of error contends that the court's ruling "is against the weight of the evidence." This court does not weigh the evidence, however, and only determines if a trier of fact could have found clear and convincing evidence that parental rights should be terminated. See In the Interest of A.D., 243 Ga.App. 727, 728, 534 S.E.2d 457 (2000).
[2] The mother consented to the termination of her parental rights during this hearing.