A05A1951. IN THE INTEREST OF C. M. et al., children.
(621 SE2d 815)

ELLINGTON, Judge.

The Juvenile Court of Bibb County terminated the parental rights of the mother and legal father of six-year-old C. M., five-year-old S. M., and three-year-old V. M. The children's father appeals, challenging the sufficiency of the evidence. Finding no error, we affirm.

On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather,

---

[14] *Wright v. State*, 210 Ga. App. 616, 617 (1) (436 SE2d 783) (1993).
[15] *Sweet v. State*, 278 Ga. 320, 325 (7) (602 SE2d 603) (2004).

we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Citation omitted.) *In the Interest of C. R. G.*, 272 Ga. App. 161, 161-162 (611 SE2d 784) (2005).

The Georgia Code sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94 (a). Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child, . . . including the need for a secure and stable home." OCGA § 15-11-94 (a).

Viewed in the light most favorable to the juvenile court's judgment, the record shows that the Georgia Department of Human Resources by and through the Bibb County Department of Family and Children Services ("the Department") first took custody of the children on February 6, 2003, several months after the parents separated. The children were removed to shelter care after the Department discovered the residence the children shared with their mother lacked running water and natural gas and was littered with trash and dog waste. The juvenile court adjudicated the children deprived in an order entered April 30, 2003, and the deprivation finding was repeated in a March 19, 2004 order which continued custody with the Department. The father did not appeal these orders and is thus bound by the deprivation determination, as he concedes. *In the Interest of A. C. O.*, 269 Ga. App. 667, 669 (1) (605 SE2d 77) (2004).

As to the second factor, the juvenile court determined that, as to the father, the children's deprivation is caused by the lack of proper parental care and control based on three statutory factors: (1) medically verifiable deficiencies of the father's physical health of such duration or nature as to render the father unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the children;[1] (2) the father's significant failure without

---

[1] OCGA § 15-11-94 (b) (4) (B) (i).

justifiable cause for the year preceding the filing of the petition for termination of parental rights to provide for the care and support of the children as required by law;[2] and (3) the father's significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to comply with a court-ordered plan designed to reunite the children with the parents.[3] In addition, the juvenile court found "the parents have been beaten down by life and are marginally able to care for themselves, but are unable to care for the children."

1. *The Father's Health Deficiencies.* In his brief, the father did not address his physical health issues or dispute the juvenile court's finding that his asthma, emphysema, and bronchitis render him unable to provide adequately for the needs of the children. Based on our review of the record, the juvenile court's finding was supported by the record.

2. *Failure to Provide for Care and Support.* The father contends the juvenile court's finding that he failed to support his children while they were in foster care was not supported by clear and convincing evidence. Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if personally disabled. OCGA § 19-7-2 (general duty to support); *In the Interest of R. W.*, 248 Ga. App. 522, 525-526 (2) (546 SE2d 882) (2001) (absence of a court order); *In the Interest of A. N. M.*, 238 Ga. App. 21, 26 (5) (517 SE2d 548) (1999) (disabled parent). The father contends he purchased items the children needed while they were in foster care, but concedes that he never paid any child support. Accordingly, the juvenile court's finding was amply supported by the record.

3. *Failure to Comply with Reunification Plan.* The father contends the juvenile court's finding that he failed to comply with a reunification plan was not supported by clear and convincing evidence. We disagree. The case plan, which the father signed on March 4, 2003, required the parents, who lived separately, to obtain and maintain a source of income, to obtain and maintain adequate housing, to arrange to supervise or provide substitute care for the children upon reunification, to complete parenting classes, and to complete a psychological assessment and follow any resulting recommendations.

At trial, the father testified that the only requirement of the case plan he satisfied was completing parenting classes. The record shows

---

[2] OCGA § 15-11-94 (b) (4) (C) (ii).
[3] OCGA § 15-11-94 (b) (4) (C) (iii).

that the father satisfied even this requirement only after the reunification plan was no longer pending and the Department had changed its goal to nonreunification.

On appeal, the father contends that he secured a source of income by obtaining disability benefits. The record shows that the father's disability benefits are barely adequate to provide for his own needs. In addition, the father blames the Department for failing to advise him to apply for benefits to which the children were entitled due to the father's disability.

The father contends that he obtained adequate housing. His case worker found the house to be filthy, barely furnished and lacking beds for the children, and completely filled with boxes and other clutter. The father admitted that he "collect[s] a lot of junk" but said he would be willing to clear it out if reunited with the children.

Finally, with regard to the psychological assessment, the record shows the father submitted to the assessment promptly. The psychologist recommended "some ongoing mental health counseling, parent training and therapeutic support." The father's argument that the psychologist's "recommendations for counseling were so general that [the father] could not have reasonably been expected to know what he was to do" has some merit. But the record shows that the father made no attempt to resolve the issue and instead blamed his failure to satisfy the requirement on a lack of transportation.

Based on all of the above, the trial court's finding that the children's deprivation is caused by the lack of proper parental care and control, the second factor, is supported by clear and convincing evidence.

The father raises no issue with regard to the juvenile court's findings that the cause of the deprivation is likely to continue and that continued deprivation is likely to harm the children, the third and fourth factors. Viewed in the light most favorable to the juvenile court's judgment, the record contains clear and convincing evidence of parental misconduct or inability. *In the Interest of J. W. M.*, 273 Ga. App. 20, 21-23 (1) (614 SE2d 163) (2005); *In the Interest of A. K.*, 272 Ga. App. 429, 433-438 (1) (612 SE2d 581) (2005); *In the Interest of T. D. B.*, 266 Ga. App. 434, 439-440 (1) (597 SE2d 537) (2004); *In the Interest of G. L. H.*, 209 Ga. App. 146, 150 (2) (433 SE2d 357) (1993).

As for the second prong of the termination analysis, we are persuaded that the termination of the father's rights is in the best interests of the children, considering the children's physical, mental, emotional and moral condition and their "need for a secure and stable home." OCGA § 15-11-94 (a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of A. C.*, 272 Ga. App. 165, 168 (2) (611 SE2d 766) (2005). See *In the Interest of*

*M. L. P.*, 236 Ga. App. 504, 510 (1) (d) (512 SE2d 652) (1999) (juvenile court has broad discretion in determining how the interest of the child is best served).

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 4, 2005.

*Michael L. Chidester*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Andrew S. Foster*, for appellee.