A06A1087. IN THE INTEREST OF D. D. B., a child.
(638 SE2d 843)

ADAMS, Judge.

The Juvenile Court of Fulton County entered an order terminating the parental rights of the mother of D. D. B. The mother appeals, enumerating three errors. Finding no error, we affirm.

On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. *In the Interest of S. H.*, 251 Ga. App. 555 (1) (553 SE2d 849) (2001). "This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." (Citation omitted.) *In the Interest of C. R. G.*, 272 Ga. App. 161, 161-162 (611 SE2d 784) (2005).

Viewed in this light, the evidence shows that the mother has three minor children. D. D. B. was born on February 12, 1999 and was taken into custody by the Fulton County Department of Family and Children Services (Department) in December 1999 because of the mother's inability to care for her children due to her admitted drug addiction. The child was adjudicated deprived and placed in the custody of the Department. That order was not appealed. The permanent plan for the children at that time was reunification with the mother. Pursuant to that plan, the mother was to attain stable housing, participate in drug assessment and treatment, become gainfully employed, cooperate with the agency and visit her children consistently. However, by June 5, 2000, the mother was still using drugs, having unsuccessfully attempted four substance abuse programs. In November 2000, the Department moved for an extension of temporary custody of D. D. B. The juvenile court granted the motion, based on the fact that the mother anticipated being in a drug treatment program for another six months and that she was without a home and currently searching for an apartment; however, the court noted that the mother was employed, attending a drug treatment program, cooperating with the Department and "doing well."

The mother's progress continued through November 2001, but by March 2002 she had relapsed and was, by her own admission, again using drugs. She was also once again unemployed and without her own place to live. However, by May, she had obtained employment and had enrolled in another drug addiction program. At that time, D. D. B. was living in a Families First foster home with one of her siblings and was doing well.

The mother continued this on-again, off-again progress over the next year. However, by March 2003 the mother was not in a drug

treatment program, had been evicted from her residence and was once again using drugs. The mother's contact with the children was inconsistent, and unsupervised visits with the mother had to be cancelled after she came to the foster home with an open bottle of alcohol in her automobile.

A petition to terminate the mother's parental rights was filed on March 24, 2004. D. D. B. was placed with a foster-to-adopt parent in May 2004, and has lived there ever since.

Hearings were held throughout 2005 on the termination petition. At a hearing on April 6, 2005, a former caseworker who had worked with the family for approximately four years testified to the mother's on-again, off-again efforts to overcome her drug addictions and to meet her reunification case plan goals. She testified that the mother had failed to meet her goals, that she was very inconsistent in her visitations with the children, and that her employment history was "very sporadic." She also testified that the mother failed to cooperate with the Department, that at times she did not know the mother's whereabouts, and that the mother would then reappear and usually report a drug relapse.

The caseworker also testified that D. D. B. had been harmed by the lack of consistent visitation and had failed to bond with her mother. She testified that the child was a "drifter" in foster care and noted specifically that D. D. B. had experienced behavioral problems requiring medication and treatment by a psychiatrist. She testified that D. D. B. was now in a pre-adoptive stable home and that she had bonded with the foster parent and was doing very well.

When the hearing resumed in June 2005, the mother testified that she had abused cocaine from 1999 to 2004, but that she had successfully completed a drug treatment plan in September 2004 and remained drug free for about a year. The mother submitted multiple negative drug screens to substantiate her claim, but she also admitted on cross-examination that she did not present any evidence of negative drug screens for the period between November 2004 and March 2005. As to her current living conditions, the mother testified that she was living in Alabama with her husband, and that although she was living there to save money with the intent of eventually getting a place of her own, she did have a room for D. D. B. The mother also testified that she had been working at McDonald's for about six months and was now a "swing-manager," but she was reluctant to discuss her pay, although she did testify she made enough to support D. D. B. and that she had pay stubs with her. She also testified that her lack of visitation with D. D. B. was due, at least in part, to the Department's failure to return her calls, although she did accept some responsibility for that failure also. She also admitted that during the time she was abusing drugs there were times when the

Department did not know her whereabouts. She denied that she had ever been specifically diagnosed with a mental illness, although she had been prescribed medication for depression in the past. She also testified that she had not attended any drug treatment follow-up care program, although she testified she was not averse to doing so. She admitted that she had not paid any support for D. D. B., and testified that she did not even know what size clothes D. D. B. wore.

Georgia law provides for a two-step process that must be followed in determining whether to terminate parental rights. OCGA § 15-11-94 requires that the trial court "first determine whether there is present clear and convincing evidence of parental misconduct or inability." Parental misconduct or inability is determined under the four criteria set forth in OCGA § 15-11-94 (b) (4) (A) (i)-(iv). Those four factors are: (1) the child is deprived; (2) the lack of proper parental care or control by the parent whose rights are being terminated is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are shown to exist by clear and convincing evidence, then the court must also determine whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home." OCGA § 15-11-94 (a). *In the Interest of C. M.*, 275 Ga. App. 719 (621 SE2d 815) (2005).

1. The mother challenges the sufficiency of the evidence to support the findings related to the third and fourth factors, conceding that the evidence presented at the hearings supports the findings on the first two factors. In a related enumeration, the mother also argues that the trial court erred by not making a finding that her current condition warranted termination of her parental rights.

The crux of the mother's arguments in support of these enumerations is that the juvenile court erred by focusing on her past conduct in determining if the deprivation of D. D. B. would likely continue. Although it is well settled that a juvenile court may consider the past conduct of the parent in determining whether the conditions of deprivation are likely to continue, *In the Interest of L. G.*, 273 Ga. App. 468, 474 (2) (c) (615 SE2d 551) (2005), it is equally true that "evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of *present* unfitness is required." (Emphasis supplied.) *In the Interest of A. M.*, 275 Ga. App. 630, 633 (621 SE2d 567) (2005). However, in considering past deprivations compared to present achievements, juvenile courts are entitled to assign "much less weight to such 'assertions of sudden parental fitness' when compared to the other evidence." *In the Interest of L. G.*, 273 Ga. App. at 474. And "what

weight to give recent improvements is a question for the trier of fact. In considering a parent's claims of recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation." (Punctuation and footnotes omitted.) *In the Interest of A. T. H.*, 248 Ga. App. 570, 573 (1) (547 SE2d 299) (2001).

Our review shows that clear and convincing evidence was presented to show that the deprivation was likely to continue. The evidence shows that the cause of deprivation in this case can be almost completely traced to the mother's drug addiction. However, despite the mother's repeated failures at successfully completing a drug treatment program prior to her alleged recent successful effort, she was not participating in any follow-up treatment programs at the time of the hearing. According to Dr. Gothard, the clinical psychologist who testified at the hearings, that failure greatly increased her chance of relapse. Dr. Gothard also testified that returning D. D. B. to the mother without the mother receiving additional therapy and participating in some sort of follow-up program could be a "recipe for disaster." Moreover, the mother had essentially abandoned care of the child for all but the first ten months of the child's life. And although the mother blamed the Department for this failure, the mother never exercised consistent visitation with D. D. B., including in the months immediately preceding the termination hearing. This resulting lack of a bond between mother and child would also point toward continued deprivation. See *In the Interest of A. T. H.*, 248 Ga. App. at 572; see also *In the Interest of D. J.*, 279 Ga. App. 355, 360 (2) (c), (d) (631 SE2d 427) (2006). Likewise, the mother's current living situation was not intended to be permanent, and evidence was presented that the arrangement was less than stable based on testimony that she argued with her husband and used profanity while speaking to him on her cellular phone during a visit with the child in January 2005, and that she would scream at her husband in the background while calling from their residence. Lastly, the mother had not paid any child support to the Department, although she testified that she earned enough to support her child. "Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income. [Cits.]" *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 613 (2) (c) (629 SE2d 822) (2006).

The question then is whether continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. While "it is not automatically true that a finding that deprivation is likely to continue will support a finding that continued deprivation will harm the child," *In the Interest of J. T. W.*, 270 Ga. App. 26, 37 (2) (d) (606 SE2d 59) (2004), in this case the trial court was authorized to

conclude that the mother's inconsistent efforts in the past to stay off drugs, lead a stable life, and perhaps most importantly, visit the child so that she could develop a bond with her had caused the child to suffer emotional difficulties and exhibit behavior problems. The evidence also showed that D. D. B. had overcome many of her problems while in foster care and that although she had no bond with her mother she had bonded with her foster parent who desired to adopt her. "We have previously held that where evidence shows no parental bond between parent and child, the child has adapted well to foster care, and the foster parents wish to adopt, this is sufficient to support the conclusion that continued deprivation is likely to harm the child. [Cits.]" *In the Interest of A. R. A. S.*, 278 Ga. App. at 615.

We also find the evidence presented at the hearings and discussed above supports the determination that termination of the mother's parental rights was in the child's best interest. "The same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest. [Cit.]" *In the Interest of D. L.*, 268 Ga. App. 360, 361 (601 SE2d 714) (2004). After reviewing the record and transcripts, we conclude there was clear and convincing evidence to support the juvenile court's finding that termination of the mother's parental rights was in the best interest of D. D. B., considering her physical, mental, emotional and moral condition and her "need for a secure and stable home." OCGA § 15-11-94 (a). *In the Interest of J. K.*, 239 Ga. App. 142, 146 (1) (520 SE2d 19) (1999). *In the Interest of C. M.*, 275 Ga. App. at 722-723.

2. The mother also argues that the trial court erred by finding that she suffered from a mental illness because there was no evidence to substantiate that finding. However, pretermitting whether sufficient evidence was presented to support this finding, it is clear from the juvenile court's order that this finding was not necessary to its determination of the existence of clear and convincing evidence of the factors necessary to support termination of the mother's parental rights. This enumeration thus affords no basis for reversal of the juvenile court's order terminating the mother's parental rights to her child D. D. B.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 16, 2006.

*Curtis W. Miller*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Saudia L. Crawford, for appellee.*