A07A2134. IN THE INTEREST OF A. H. et al., children.
(656 SE2d 254)

BARNES, Chief Judge.

The juvenile court terminated the natural father's parental rights to his three children, A. H., D. H., and C. H. The father appeals, challenging the sufficiency of the evidence supporting termination.[1] We find the evidence sufficient and affirm.

1. When reviewing an order terminating parental rights, we construe the evidence in the light most favorable to the juvenile court's ruling and determine "whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Citation and punctuation omitted.) *In the Interest of A. H.*, 278 Ga. App. 192 (628 SE2d 626) (2006). Viewed in this manner, the evidence shows that the Department of Family and Children Services ("DFCS") first removed D. H. and A. H. from their home in 2002, when they were one and four years old, respectively. The children were declared deprived based on their parents' substance abuse, incarceration, and harsh discipline, and DFCS developed a reunification case plan for the parents. C. H., who was born in January 2003, remained in the parents' home with monitoring and assistance from DFCS.

The parents apparently made progress on their case plan, and D. H. returned to the family home in February 2004. A. H., who has special needs, remained in DFCS custody until May 2004, when she also returned home. In October 2004, however, DFCS removed all three children from their parents' custody after a caseworker found A. H. home alone and learned that the family was about to be evicted.

The juvenile court subsequently adjudicated the children deprived based on the parents' lack of housing, unemployment, substance abuse, and neglect. DFCS prepared case plans for the parents, requiring them, among other things, to become and remain alcohol and drug free; submit to drug screens; complete a substance abuse program; maintain stable housing and employment; complete parenting classes; maintain a bond with the children; and inform DFCS of any address changes. During ensuing case reviews, the juvenile court noted that neither parent had complied with case plan requirements.

DFCS petitioned to terminate the parents' rights to their children in October 2006, and the juvenile court held a termination hearing in March 2007. The children's caseworkers testified that the parents failed to successfully complete their case plans. Although the father informed DFCS that he had fulfilled certain requirements,

---

[1] The juvenile court also terminated the mother's parental rights, but the mother is not a party to this appeal.

such as parenting classes, he provided no proof of completion. In addition, he did not keep DFCS apprised of his current address, and DFCS lost contact with him from May 2005 until October 2006, when a caseworker discovered that he was in jail.

In April 2005, the mother reported that the father had hit her. That same month, DFCS suspended the father's visitation with the children after he tested positive for drugs, and he never asked to recommence the visits. As noted above, the father disappeared the following month, and he did not inquire about the children's welfare until February 2007, several months after DFCS petitioned to terminate his parental rights.

The father has a history of substance abuse and was involved in methadone treatment, but failed to make progress with his treatment regimen. In February 2005, DFCS referred the father to a "parent aide" at a private company to help him meet his case plan goals. The aide, who worked with the father until she lost contact with him in May 2005, testified that despite her efforts, he did not maintain steady housing or employment during that period, did not complete substance abuse classes or treatment, and spent some time in jail. The father also had three positive drug screens in March and April 2005.

A professional counselor who evaluated D. H. and C. H. testified that D. H. suffered from, among other things, depression, anxiety, acting-out behaviors, and reactive attachment disorder. According to the counselor, D. H. needed counseling and a stable environment with predictable, orderly guidelines to help her address her issues. C. H., who was 11 months old at the time of the evaluation, also exhibited fearful and withdrawn behavior.

At the time of the hearing, all three children were living in the same foster home with foster parents who had indicated a desire to adopt them. The behavioral problems exhibited by A. H. and D. H. had improved, the children were attending counseling sessions, and all were doing well in the placement.

Testifying on his own behalf, the father admitted that he did not contact DFCS between May 2005 and February 2007, and he provided no financial support for the children after May 2005. He acknowledged his history of domestic violence, criminal convictions, and probation violations. Furthermore, he admittedly spent approximately nine months hiding and "running" from authorities to avoid outstanding warrants prior to his incarceration in October 2006. Following his release from prison, he had difficulty obtaining employment, but finally found work one month before the termination hearing. Although the father conceded that he had serious substance abuse issues and failed to complete a drug treatment program, he

asserted at the hearing that he no longer used drugs and had been drug-free for six or seven months.

Before terminating parental rights, the juvenile court must conduct a two-step analysis:

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition[s] and needs, including the need for a secure and stable home.

(Citation omitted.) *In the Interest of A. H.*, 278 Ga. App. at 193.

On appeal, the father only challenges two elements of this analysis. Specifically, he claims that the evidence failed to demonstrate that the cause of the children's deprivation was likely to continue and that such continued deprivation would harm the children.

(a) *The cause of the deprivation is likely to continue.* The father argues that the State presented no evidence regarding his condition or progress during the six months prior to the termination hearing. According to the father, he significantly improved his circumstances during that time and satisfied several case plan goals, such as achieving sobriety.

In determining whether the cause of deprivation is likely to continue, the juvenile court may consider the parent's past conduct, as well as repeated failure to comply with case plan goals. See *In the Interest of A. H.*, 278 Ga. App. at 195 (2). Although the court should take recent improvements into account, it ultimately must determine whether those improvements warrant hope of rehabilitation. See *In the Interest of D. D. B.*, 282 Ga. App. 416, 419 (1) (638 SE2d 843) (2006). And it may "assign much less weight to . . . assertions of sudden parental fitness when compared to the other evidence." (Citation and punctuation omitted.) Id. at 418 (1).

The evidence shows that A. H. and D. H. were removed from their parents' custody in 2002, then returned in 2004 when conditions in the home improved. But just a few months later, those conditions again deteriorated, resulting in removal of all three children. The father has a lengthy history of substance abuse, instability, and past

criminal behavior. He failed to support his children financially while they were in DFCS custody, did not visit them after April 2005, and did not inquire about their welfare until the month before the termination hearing. Moreover, he cut off all contact with DFCS while evading authorities in 2005 and 2006, and he did not complete his case plan, despite the work of his parent aide.

Although the father now claims that he has changed his life, he never completed a drug treatment program and offered no evidence of recent negative drug screens at the termination hearing. In addition, he had been employed for only one month on the hearing date, and he still lived with his parents. Under these circumstances, the juvenile court was authorized to discount the father's recent efforts and find that the cause of the children's deprivation is likely to continue. See *In the Interest of D. D. B.*, 282 Ga. App. at 418-419; *In the Interest of A. H.*, 278 Ga. App. at 195-196 (2).

(b) *Harm to the children.* The father argues that the State failed to present evidence that the continuing deprivation is likely to harm the children. We disagree.

In assessing harm, a juvenile court may consider the adverse effect of prolonged foster care. See *In the Interest of A. H.*, 278 Ga. App. at 197 (3). "It is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Citation omitted.) Id. The same evidence that demonstrates continuing deprivation also may support a determination that such condition will harm the children. See id. at 196.

At the time of the termination hearing, the children had been in DFCS custody for over two years, and A. H. and D. H. had previously spent several years in foster care. A professional counselor testified that D. H. needed a stable environment to combat her behavioral and psychological problems. The State also offered evidence that the children were thriving in their current placement and that their foster parents had indicated a desire to adopt them

Moreover, as noted above, the father has a lengthy history of substance abuse and instability, failed to complete his case plan, did not visit the children after April 2005, did not inquire about their welfare between that time and February 2007, failed to support them financially, and disappeared for an extended period while they were in DFCS custody. Such evidence supported the conclusion that continued deprivation would likely cause the children serious physical, mental, emotional, or moral harm. See *In the Interest of A. H.*, 278 Ga. App. at 196; *In the Interest of D. D. B.*, 282 Ga. App. at 420.

2. In a related claim of error, the father argues that the juvenile court erroneously determined that he failed to comply with his case plan, given his sobriety and employment at the time of the termination hearing. The case plan, however, had numerous requirements.

And even if the father was drug-free and employed on the hearing date, the juvenile court properly found that he failed to satisfy other parts of the plan, such as completing a treatment program, keeping in contact with DFCS, demonstrating stability, and maintaining an attachment to the children. Accordingly, this enumeration of error presents no basis for reversal.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED JANUARY 8, 2008.

*James J. Anagnostakis*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, T. Michael Flinn, Rita F. Cooper, William E. Brewer*, for appellee.