663 S.E.2d 757 (2008)
In the Interest of C.W. et al., children.
No. A08A0404.
Court of Appeals of Georgia.
June 17, 2008.
*758 Adam S. Jaffe, Benjamin I. Jordan, Aaron L. Michelman, Atlanta, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, for appellee.
JOHNSON, Presiding Judge.
The Fulton County Juvenile Court terminated the parental rights of the mother and respective fathers of minor children C.W. and A.W. The mother appeals, challenging the sufficiency of the evidence supporting the termination order. The challenge is without merit, and we thus affirm the order of the juvenile court.
On appeal from an order terminating parental rights, we do not determine the credibility of witnesses or weigh the evidence.[1] Instead, we must view the evidence in the light most favorable to the juvenile court's order and determine whether a rational trier of fact could find by clear and convincing evidence that the natural parent's rights should be terminated.[2]
Viewed in favor of the juvenile court order, the evidence shows that C.W. was born on March 28, 2000. In February 2002, the Department of Family and Children Services filed a deprivation petition alleging that the mother was unable to provide proper care because, among other things, the utilities at her home had been disconnected and she had been arrested for reckless conduct after leaving C.W. and another one of her children[3] alone at a motel. That case was continued, and A.W. was subsequently born on June 6, 2003.
The day after A.W.'s birth, the juvenile court entered an order authorizing that he be placed in shelter care due to inadequate housing, food and clothing. A week-and-a-half later, the juvenile court entered an order placing A.W. in the Department's custody because there were conflicting stories about whether the parents had housing. The record is unclear about C.W.'s placement at this time, but it appears that she was supposed to be in the custody of her maternal grandmother.
Two months later, in August 2003, C.W. was taken to a hospital by paramedics with third-degree burns on her feet. Both the mother and A.W.'s father were arrested and charged with cruelty to children. The mother eventually pled guilty to cruelty to children in the first degree, and was given a sentence of three years in confinement, commuted to time served, and seven years on probation, which she will be serving until 2012.
At the time of the burned feet incident in August 2003, the juvenile court entered orders *759 finding that the children were deprived, that the mother's housing was unstable, that she was unemployed, and that she was possibly abusing illegal drugs. Those orders were never appealed. Also in August 2003, C.W. and A.W. were placed in foster care, and they have remained in the same foster home since that time.
On January 13, 2004, the juvenile court entered another order finding the children to be deprived. Among other things, the court found that the mother had no home of her own and had moved from place to place, that she was unemployed and unable to provide for the financial needs of the children, and that the children were at risk of physical and emotional harm if they were in the mother's care. The court ordered the mother to complete a case plan for reunification with the children and to cooperate fully with the Department. This order was never appealed.
In January 2005, the juvenile court ordered that the children remain in the Department's temporary custody because the mother had not yet obtained suitable housing. From February to May 2005, the mother was incarcerated. A year later, in June 2006, the juvenile court entered an order finding that C.W. and A.W. continued to be deprived due to the mother's unstable housing, job instability, history of incarceration and failure to complete the case plan. These orders were never appealed.
The Department filed the petition to terminate parental rights in November 2006, and a hearing on the petition was held on July 19, 2007. A Department caseworker testified that the mother had lived in six different places since 2003, including a hotel, an apartment that had been condemned, and an apartment in which there was no electricity. Other testimony established that the mother had not paid any child support for C.W. and A.W. She also missed numerous visitations, admitting that she had not seen the children for six months prior to the hearing. During the entire year before the hearing, she had only visited with them four times.
The mother testified that she had been working at a McDonald's restaurant for approximately ten months. Although pay stubs show that her take home pay was about $1,000 per month, she claimed that she was taking home $1,200 per month due to a raise and overtime pay. She further testified that she had moved into a house several months before the hearing and paid rent of $750 per month.
OCGA § 15-11-94 sets forth the grounds required for a court to terminate parental rights.
First, the trial court determines whether there is present clear and convincing evidence of parental misconduct or inability. Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home.[4]
In the instant case, the mother does not challenge the trial court's findings that her children are deprived and that such deprivation is caused by her lack of parental care or control. Rather, she argues that there is not enough evidence to support the findings that the cause of the deprivation is likely to continue, that the continued deprivation is likely to harm C.W. and A.W., and that termination is in the best interests of the children. The crux of her argument is that these grounds for termination cannot be established since she presented evidence showing that she had stayed in the same home and worked at the same job for several months immediately preceding the hearing.
*760 This argument, however, ignores the mother's long history of parental neglect, misconduct and inability.
In determining whether the cause of deprivation is likely to continue, the juvenile court may consider the parent's past conduct, as well as repeated failure to comply with case plan goals. Although the court should take recent improvements into account, it ultimately must determine whether those improvements warrant hope of rehabilitation. And it may assign much less weight to assertions of sudden parental fitness when compared to the other evidence.[5]
Moreover, the same evidence that demonstrates continuing deprivation may also support a finding that such deprivation is likely to harm the children.[6]
In the instant case, the juvenile court was authorized to assign less weight to the mother's assertions of recent job and home stability when compared to other evidence of her parental misconduct and inability. Her history of arrests, her conviction for cruelty to children arising from C.W.'s burnt feet, her inability for years to establish stable income or provide proper housing, her failure to pay any child support while C.W. and A.W. have been in foster care, and her failure to maintain contact with her children through scheduled visitations are all factors that support the juvenile court's findings that the cause of the children's deprivation is likely to continue and that such continued deprivation is likely to cause the children serious harm.[7]
The juvenile court was also authorized to conclude that the termination of the mother's parental rights was in the children's best interests. "In making this determination, the court could consider the same factors that supported its finding of parental inability."[8] Again, the mother's lengthy history of parental misconduct and inability support the finding that termination is in the children's best interests. Moreover, the juvenile court could consider the children's need for a stable home environment and the detrimental effects of prolonged foster care.[9] Here, the children have been in the same foster home since 2003, they are doing well in that home, and the foster parent wants to adopt the children and provide them a permanent home. Under these circumstances, we find no reversible error in the juvenile court's order.
Judgment affirmed.
BARNES, C.J., and PHIPPS, J., concur.
NOTES
[1] In the Interest of G.W.R., 270 Ga.App. 194, 606 S.E.2d 281 (2004).
[2] Id.
[3] This older child is not a subject of the instant termination case.
[4] (Citations and punctuation omitted.) In the Interest of C.M., 275 Ga.App. 719, 720, 621 S.E.2d 815 (2005).
[5] (Citations and punctuation omitted.) In the Interest of A.H., 289 Ga.App. 121, 123(1)(a), 656 S.E.2d 254 (2008).
[6] Id. at 124(1)(b), 656 S.E.2d 254.
[7] See In the Interest of J.B.M., 284 Ga.App. 480, 484-485(1), 644 S.E.2d 317 (2007) (a few months of partial stability do not establish that parent is capable of maintaining progress).
[8] (Citation omitted.) Id. at 485(2), 644 S.E.2d 317.
[9] In the Interest of J.S.H., 266 Ga.App. 865, 869, 598 S.E.2d 545 (2004).