## A08A0899. IN THE INTEREST OF D. W., a child.
### (668 SE2d 533)

RUFFIN, Presiding Judge.

The mother of ten-year-old D. W. appeals the juvenile court's order terminating her parental rights, contending that the evidence was insufficient to support the termination. For reasons that follow, we disagree and affirm.

> On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.[1]

Viewed as such, the evidence shows that the juvenile court placed D. W. in shelter care on February 28, 2006, finding that the mother's whereabouts were unknown, and that the father, who had tested positive for methamphetamine, had not legitimated the child. Following the 72-hour hearing, the juvenile court placed temporary custody of the child with the Douglas County Department of Family and Children Services (the "Department").

---

[1] (Citation and footnote omitted.) *In the Interest of C. R. G.*, 272 Ga. App. 161, 161-162 (611 SE2d 784) (2005).

On July 28, 2006, the juvenile court adjudicated D. W. to be a deprived child. That order was not appealed. The juvenile court found that the mother: was then incarcerated; appeared once on the case; submitted to a single drug screen, which was positive for methamphetamine; had a history of issues of substance abuse and mental health for which she was not receiving treatment; and failed to obtain housing or employment.

The juvenile court incorporated the reunification case plan, initially filed March 20, 2006, into the adjudication order. Pursuant to the case plan, the mother was required to refrain from the use of illegal drugs and alcohol, obtain a substance abuse assessment, submit to random drug and alcohol screens, complete a psychological evaluation and follow all recommendations of that evaluation, attend parenting classes, obtain and maintain employment and provide verification upon request, and obtain and maintain housing sufficient to meet her needs and the needs of the child, among other things.

In an order upon judicial review dated August 30, 2006, the juvenile court found that the mother was still incarcerated and ordered her to attend the "SHARP" drug treatment program if she remained in jail or a residential treatment program upon her release. The mother subsequently agreed to a second reunification case plan, dated September 19, 2006. Her plan goals remained substantially the same as her initial case plan.

The Department filed a petition to terminate the parental rights of both parents on May 21, 2007. At the termination hearing, which was held on July 18, 2007, and October 9, 2007, the mother testified that when D. W. was placed in Department custody, the child had not been in her care for five years. During that period, the child lived with his maternal grandmother and maternal great-grandmother due to what the mother described as her "drug problem" with methamphetamine and marijuana. The mother admitted that she had been in jail for seven-and-a-half months of the previous fifteen months. She attended two or three SHARP treatment classes while she was in the Douglas County jail and some other "little classes" while she was in the Carroll County jail. She did not successfully complete the SHARP program.

While not in jail, the mother tried to enter the Mothers Making a Change program, but, according to the mother, she did not have any identification, which was a prerequisite to enrollment. At the time of the July 18, 2007 hearing, the mother was incarcerated in Cobb County for failure to appear to answer charges of giving false information, giving a false date of birth, and signing false statements. When the hearing was reconvened on October 9, 2007, the mother testified that she was scheduled to be released on October 30,

2007, but conceded that Douglas County had placed two unresolved "holds" on her that might delay her release.

The child's case manager testified that the mother had made "very little" progress on her case plan. The mother made no effort to meet with the manager following a March 2007 case plan meeting during which the mother refused to submit to a drug screen. She promised to go to the case manager's office several other times, but she never appeared and the case manager was never able to secure a drug screen on the mother. The mother admitted to using marijuana "right before" her latest incarceration.

According to the mother, she worked for three months during the time she was not in jail, but she admitted that she had provided no proof of income to the Department or to the court. The mother completed a psychological evaluation, but when asked if she had followed the recommendations of that evaluation, the mother answered that she did not know what the recommendations were.[2] As to her living conditions, the mother testified that when she was released from jail, she stayed a week with her grandmother, but then moved in with her boyfriend; there is no evidence showing that the mother secured a residence. She did not see or try to see D. W. after he came into the Department's custody, in part because there was an order barring her from having contact with the child after she tested positive for methamphetamine.[3] She did not pay any child support.

1. A juvenile court's termination of parental rights is a two-step process:

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[4]

---

[2] The case manager was unable to confirm that the mother received a copy of the psychological evaluation, but testified that they discussed the recommendations contained in the evaluation.

[3] The trial court found the mother had tested positive for methamphetamine in the deprivation order, but it is not clear when the test occurred.

[4] (Footnotes omitted.) *In the Interest of T. F.*, 250 Ga. App. 96, 97-98 (1) (550 SE2d 473)

The mother contends that the Department failed to establish parental misconduct or inability by clear and convincing evidence. We disagree.

(a) *The child is deprived.* Because she failed to appeal the juvenile court's order adjudicating D. W. to be a deprived child, and because the Department has demonstrated that the conditions upon which this finding was based still existed at the time of the hearing on the termination petition, this determination was binding on the mother.[5]

(b) *The mother's lack of proper parental care or control caused the deprivation.* Evidence of the mother's unrehabilitated drug use[6] and her failure for a period of more than a year before filing of the termination petition to comply with her reunification case plan, pay child support, or maintain any parental bond with the child supported the juvenile court's finding that D. W. is without proper parental care or control.[7]

(c) *The causes of the deprivation are likely to continue.*

> In determining whether the cause of deprivation is likely to continue, the juvenile court may consider the parent's past conduct, as well as repeated failure to comply with case plan goals. Although the court should take recent improvements into account, it ultimately must determine whether those improvements warrant hope of rehabilitation. And it may assign much less weight to assertions of sudden parental fitness when compared to the other evidence.[8]

In this case, evidence showed that due to the mother's unrehabilitated drug use, D. W. had not been under her direct care for many years. She showed disregard for her reunification case plan by refusing to submit to drug screens. She made no demonstrated progress in the plan goals of obtaining and maintaining a job or a residence.[9] Other than her completion of a substance abuse and psychological evaluation, there was little, if any, evidence of recent improvement by the mother. In light of the foregoing, any rational

---

(2001). See OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv).

[5] See *In the Interest of R. C. M.*, 284 Ga. App. 791, 798 (III) (1), n. 6 (645 SE2d 363) (2007); *In the Interest of A. K.*, 272 Ga. App. 429, 434 (1) (a) (612 SE2d 581) (2005).

[6] See OCGA § 15-11-94 (b) (4) (B) (ii).

[7] See OCGA § 15-11-94 (b) (4) (C).

[8] (Citation and punctuation omitted.) *In the Interest of A. H.*, 289 Ga. App. 121, 123 (1) (a) (656 SE2d 254) (2008).

[9] See *In the Interest of S. B.*, 287 Ga. App. 203, 212-213 (2) (651 SE2d 140) (2007) (mother's lack of involvement in her children's welfare and failure to comply with case plan goals supported finding that deprivation was likely to continue).

trier of fact could find by clear and convincing evidence that D. W.'s deprivation was likely to continue.[10]

(d) *Continued deprivation is likely to cause the child serious physical, mental, emotional, or moral harm.* Given that the mother failed to address her problem with the use of illegal drugs and that she otherwise failed to take the steps necessary to reunite with D. W., the evidence was sufficient to demonstrate that D. W.'s continued deprivation will cause or will likely cause the child serious physical, mental, emotional, or moral harm.[11] "Additionally, it is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems."[12]

In view of the foregoing, any rational trier of fact could have found clear and convincing evidence of parental misconduct or inability.[13]

2. The mother also contends that the Department failed to show by clear and convincing evidence that the termination of the mother's parental rights was in the child's best interest. We disagree.

"The same facts that support a juvenile court's conclusion that a child is deprived and that the deprivation is likely to continue if placed with the parent also support a conclusion that . . . termination of parental rights would be in the child's best interest."[14] In addition to the evidence of parental inability, D. W.'s caseworker testified that if the mother's parental rights were not terminated, the child would not have a stable home and that his needs would not be met. The Department was seeking a permanent home for the child and had identified several potential matches. Considering the child's need for a permanent, stable home and the mother's past parental misconduct, any rational trier of fact could have found by clear and convincing evidence that termination of the mother's parental rights was in D. W.'s best interest.

3. The mother further contends that the juvenile court erred: in relying on a psychological report that was not entered into evidence and on certain alleged hearsay statements by the child; in finding that there was no bond between the mother and D. W.; in failing to recognize that the Department did not provide the mother adequate

---

[10] See id. at 213 ("[f]rom the mother's past parental deprivation, the juvenile court was authorized to infer that the children's deprivation was likely to continue").

[11] See *In the Interest of M. N. R.*, 282 Ga. App. 46, 48 (637 SE2d 777) (2006) (parent's failure to remain drug free and failure to take steps to reunify with child sufficient to support finding that continued deprivation would harm child); *In the Interest of A. B.*, 274 Ga. App. 230, 232 (617 SE2d 189) (2005) (same).

[12] (Punctuation and footnote omitted.) *In the Interest of J. S. T. S.*, 273 Ga. App. 221, 226 (614 SE2d 863) (2005).

[13] See id.

[14] (Footnote omitted.) *In the Interest of S. B.*, supra, 287 Ga. App. at 213 (3).

assistance in understanding and performing her case plan; and in terminating the mother's parental rights even though the only permanency plan on record was for reunification. The mother also points to a list of "numerous other errors" by the juvenile court during the course of the hearing. We find the mother's arguments to be without merit.

(a) In its termination order, the juvenile court refers to the substantive contents of the mother's psychological evaluation, but the evaluation was never entered into evidence and does not otherwise appear in the record in connection with a previous proceeding before the juvenile court,[15] nor did the examining psychologist testify as to its contents. Accordingly, the juvenile court erred in referring to contents of the evaluation.[16] Nevertheless, we conclude that the error was harmless. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful."[17]

The juvenile court referred to the psychological evaluation in finding that the mother failed to follow through on her mental health issues as required by her case plan and also found that the evaluation did not present an issue insofar as the mother's ability to understand what was required of her under the case plan. However, the trial court's reference to the psychological evaluation, particularly that the mother had "four Axis one diagnoses," had little bearing on the substantive issue of whether the mother had complied with the case plan. The juvenile court also relied on numerous factors other than the evaluation in rejecting the mother's claim that she lacked understanding of her case plan, including the level of her education, the assistance available to her, and the provision to her of legal counsel.[18] Accordingly, we conclude that the mother failed to show she was harmed by the juvenile court's error in referring to the contents of her psychological evaluation.

(b) The mother contends that the juvenile court erroneously relied on hearsay evidence in referencing testimony that the child "has only asked about his great-grandmother and never asks about his biological parents." The evidence shows, however, that the case manager testified that she had personal knowledge of the statements

---

[15] See In the Interest of S. H. P., 243 Ga. App. 720, 722 (1) (a) (534 SE2d 161) (2000) (the juvenile "court may take judicial notice of records in the same court") (punctuation omitted).

[16] See generally Scott v. State, 270 Ga. App. 292, 295 (2) (606 SE2d 312) (2004) (trial court's consideration of matters outside the record was improper).

[17] (Punctuation omitted.) In the Interest of M. T. C., 267 Ga. App. 160, 162 (598 SE2d 879) (2004).

[18] See, e.g., In the Interest of A. C. O., 269 Ga. App. 667, 672 (2) (605 SE2d 77) (2004) (evidence which is admissible and cumulative of the same fact renders harmless admission of incompetent evidence).

made to her by the child, and so the testimony on this issue was not hearsay.[19] Accordingly, we find no error as alleged.

(c) The mother claims that the juvenile court erred in relying on evidence showing she had no bond with D. W. because the mother's visitation rights had been suspended while the child was in Department custody. We disagree. The mother had an opportunity to bond with D. W., but her drug use resulted in the loss of custody and in the positive drug screen for methamphetamine which prompted the juvenile court to bar visitation. The mother cites no authority which would preclude the juvenile court from considering evidence as to the bond between the mother and child under these circumstances.[20]

(d) The mother maintains that the juvenile court erred in terminating her parental rights because the Department failed to provide her with adequate direction, instruction, and assistance in completing her case plan. Even if we accepted the factual claims underlying this argument,[21] the mother does not show that the Department's failure to provide these types of services precluded termination of her parental rights.[22]

(e) The mother points out that although the juvenile court held a permanency hearing in February 2007 in which it found that the permanency plan was termination, the record does not demonstrate that the Department submitted the written report as contemplated by OCGA § 15-11-58 (o) (2), announcing termination of parental rights as the permanency plan. Pretermitting whether the Department submitted the report contemplated by OCGA § 15-11-58 (o) (2), compliance with this provision is not a prerequisite to termination of parental rights under OCGA § 15-11-94.[23]

(f) The mother also refers to a number of alleged errors by the juvenile court in overruling certain objections by the mother's counsel. To the extent that we can discern the mother's legal

---

[19] See *Scott v. State*, 130 Ga. App. 75, 78 (3) (202 SE2d 201) (1973) ("[b]ecause the [witness's] testimony was based upon his personal observation it was not hearsay").

[20] Compare *In the Interest of A. G. I.*, 246 Ga. App. 85, 89 (2) (e) (539 SE2d 584) (2000) (lack of bond could not be grounds for finding parental inability because mother was incarcerated since before child was born).

[21] We note that although the mother claims that she never understood what was required of her, the caseworker testified that she met with the mother in July 2006 to discuss the mother's reunification case plan and that they went over the plan point by point.

[22] See, e.g., *In the Interest of S. J. C.*, 234 Ga. App. 491, 494-495 (2) (507 SE2d 226) (1998) (rejecting argument that court erred in terminating mother's parental rights because Department was required to provide appropriate resources to aid in reunification).

[23] See *In the Interest of B. T.*, 291 Ga. App. 604, 608 (c) (662 SE2d 656) (2008) ("OCGA § 15-11-58 does not impose upon termination proceedings the same procedures that apply to disposition orders and recommendations regarding reunification"); *In the Interest of V. S.*, 230 Ga. App. 26, 31 (2) (495 SE2d 142) (1997) ("proceedings [under OCGA §§ 15-11-58 and 15-11-94] remain separate and distinct, and the juvenile court did not err by treating them as such").

arguments which are not supported by citation to any authority, we find no error. The mother also contends that on the second day of the termination hearing an adoption worker was present in the courtroom while the case manager testified and that the adoption worker later testified in violation of the rule of sequestration. But the mother failed to object to the presence of the witness in the courtroom, and so that issue is waived on appeal.[24]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED OCTOBER 17, 2008.

*Ernest C. Crosby, Jana L. Evans*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Andrea R. Moldovan*, for appellee.

---

[24] See *Forde v. State*, 277 Ga. App. 410, 412 (2) (626 SE2d 606) (2006).